UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

ELIZABETH ANDRES, *et al.*,

    Plaintiffs,

v.

    Case No. 1:17-cv-00377

TOWN OF WHEATFIELD, OCCIDENTAL
CHEMICAL CORPORATION, BELL
HELICOPTER TEXTRON, INC.,
SAINT-GOBAIN ABRASIVES, INC., ROE
CONSOLIDATED HOLDINGS, GRAPHITE
SPECIALTIES, CROWN BEVERAGE
PACKAGING, LLC, and GREIF, INC.,

    Defendants/
    Third Party Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Third-Party Defendant.

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR A
PRELIMINARY INJUNCTION**
(Doc. 39)

On March 26, 2017, current and former residents of North Tonawanda, New York, and surrounding areas (collectively, "Plaintiffs") filed this class action, asserting state law claims of negligence, strict liability for engaging in an abnormally dangerous activity, private nuisance, and trespass. They seek damages for property damage and personal injury, medical monitoring, as well as punitive damages arising from the alleged release of hazardous materials from the Nash Road Landfill ("the Site").

On September 25, 2017, this matter came before the court for oral argument on Defendants' motion for a preliminary injunction (Doc. 39). Defendants Town of Wheatfield, Occidental Chemical Corporation, Bell Helicopter Textron, Inc., Saint-Gobain Abrasives, Inc., and Crown Beverage Packaging, LLC (collectively, "Defendants")[1] ask the court to enjoin Plaintiffs from engaging in certain sampling activities without notice and the opportunity for split sampling. More specifically, they ask the court to order Plaintiffs to: (1) preserve and maintain records from previous environmental sampling[2] and (2) provide ninety-six hours' notice, contemporaneous access, and split sampling for all future environmental sampling.

Plaintiffs oppose the motion, arguing that the injunction would infringe on attorney work product, the non-testifying expert privilege, and the attorney-client privilege. Although they agree to split sampling, they contend that they can provide such samples to Defendants without allowing Defendants contemporaneous access to the sampling site. Defendants counter that this measure is inadequate to verify the location, chain of custody, and reliability of the samples taken.

In support of their request for preliminary injunctive relief, Defendants proceed solely by affidavit. In doing so, they agree that the court's findings of fact may be based solely on undisputed facts. Defendants consent to be bound in a reciprocal manner by any preliminary injunction the court orders.

## I. Findings of Fact.

For the purposes of the pending motion, the court finds the following by a preponderance of the evidence:

---

[1] Roe Consolidated Holdings, Graphite Specialties and Greif, Inc. are both listed as Defendants in Plaintiffs' Complaint but do not join in the request for a preliminary injunction. The United States, a third-party defendant, did not join in the motion or consent to be bound by the proposed injunction.

[2] Defendants' motion requests that Plaintiffs "preserve and maintain all Environmental Sampling and Environmental Test Results that have already occurred, including but not limited to all related records, test results, chain of custody documentation, methodologies of preservation, documents, address keys, field notes, photographs, videos, and/or electronically stored information," (Doc. 39 at 1, ¶ 1.)

1. The Site extends over twenty-five acres, is currently owned by the Town of Wheatfield, and located on 7415 Nash Road, Wheatfield, New York 14120-1511, just north of the North Tonawanda city limits. From 1955-1969, the Site operated as a closed, unlined, and uncapped landfill. During this time, Plaintiffs allege that Defendants, as well as the Niagara Falls Air Force Base, disposed of hazardous waste at the Site, which leached into the soil, surface water, and groundwater of the surrounding area, causing the personal injuries and property damage allegedly suffered by Plaintiffs.

2. In addition to Plaintiffs, approximately two hundred other individuals with potential claims against Defendants have retained the law offices of Napoli Shkolnik PLLC, Smith Stag, LLC, and Christen Civiletto, Esq. to represent them ("non-party potential claimants").

3. "Environmental sampling" is defined as "any sampling associated with any air, soil, water, groundwater, sediment, waste or biological material . . . at any location at, or in the vicinity of, [the Site,] including Plaintiffs' residences and the surrounding neighborhood, whether indoors or outdoors, regardless of who owns the property[.]" (Doc. 39-1 at 1-2, ¶ 3.)

4. "Split samples" are defined as "equivalent portions of the same sample that are analyzed separately, typically by different parties using different laboratories, and is used to spot check the accuracy of data." (Doc. 39-8 at 2.) Split sampling is a routine practice in toxic tort litigation as it allows the parties to compare lab results. *See* 2 JAMES T. O'REILLY, TOXIC TORTS PRACTICE GUIDE § 17:13 (2d ed. 2017) ("Typically, a negotiated agreement will provide a time and manner of inspection and will provide for a split sample, one-half for each adversary, so that lab results can be fairly compared."). Without split sampling, it will be difficult to obtain nearly equivalent samples because environmental samples have a "hold time," defined as the period between extraction and preservation of the sample, of less than forty-eight hours to fourteen days, depending on the chemical compound tested.

5. Environmental conditions in the soil, surface water, and groundwater of the Site and surrounding properties are uncontrolled and subject to change due to manmade or natural influences, such as rainfall infiltration. As a result, samples taken from the same location but at different times are unlikely to be identical, potentially contributing to variations in testing results, and rendering it difficult to replicate testing results.

6. Proper expert evaluation of samples taken from the Site requires knowledge of the manner, location, and chain of custody of the sample, including the manner of storage, transportation, and preservation until testing occurs. Contemporary access to the sampling site is necessary to obtain this information, minimize the delay prior to transfer of the sample, as well as to ensure that the split samples are as equivalent as possible.

7. In March 2017, the New York State Department of Environmental Conservation ("NYSDEC") announced it will conduct environmental sampling near the Site. Plaintiffs requested and obtained split samples from NYSDEC's environmental sampling. On May 10 and 11, 2017, NYSDEC conducted soil sampling at properties adjacent to the Site and published the results of its testing on July 11, 2017.

8. Plaintiffs have conducted environmental sampling on Plaintiffs' real property and intend to perform further environmental sampling in connection with their claims in this lawsuit, including environmental sampling at the real property owned or occupied by non-party potential claimants.

9. Plaintiffs have made several statements to local media outlets regarding the results of Plaintiffs' environmental testing. For example, on July 11, 2017, the Buffalo News quoted Plaintiffs' counsel as stating that Plaintiffs' testing indicated twenty toxic chemicals were present on residents' properties and that "[w]e're finding it in the kitchens, in the bedrooms, not just in the basements[.]" (Doc. 43-3 at 5.) A July 12, 2017 article by the *Investigative Post* cites Plaintiffs' counsel statement that he advised "state authorities more than a month ago that his testing found dangerous levels of chemicals inside homes, not the soil." (Doc. 43-4 at 2.)

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

The Second Circuit has retained its own standard requiring a party seeking a preliminary injunction to show: "[(a)] irreparable harm and [(b)] either [(1)] likelihood of success on the merits or [(2)] sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief[.]" *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (internal quotation marks omitted); *see also Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (ruling that the "serious questions" standard "remains valid" after *Winter*) (internal quotation marks omitted).

## B. Likelihood of Success on the Merits/Sufficiently Serious Questions Going to the Merits.

In this case, neither party claims the merits of Plaintiffs' claims or Defendants' defenses are directly implicated by the proposed injunction. Instead, Defendants argue that a preliminary injunction is necessary to prevent the "spoliation of critical evidence[,]" because, in the absence of injunctive relief, it will be impossible for them to replicate Plaintiffs' sampling and confront it with their own expert analysis. (Doc. 39-17 at 25.) Plaintiffs oppose injunctive relief, claiming Defendants seek to intrude on Plaintiffs' privileged communications between their existing and potential clients, as well as their experts. They argue that the proposed injunction will reveal their litigation strategies and impact the privacy interests of non-parties

Defendants cite *Abbo-Bradley v. City of Niagara Falls*, 293 F.R.D. 401 (W.D.N.Y. 2013), while Plaintiffs cite *Abbo-Bradley v. City of Niagara Falls*, 3 N.Y.S.3d 842 (N.Y. App. Div. 2015), in support of their respective positions regarding injunctive relief. In *Abbo-Bradley*, homeowners residing near a landfill brought a Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") claim against the City of Niagara Falls and several corporate defendants, alleging hazardous waste deposited by those defendants had migrated from the landfill and caused Plaintiffs personal injury and property damage. Defendants sought a preliminary injunction from the Western District of New York, seeking (1) written notice ninety-six hours in advance of any environmental testing, (2) contemporaneous access to the sampling site, and (3) an opportunity to take split samples. The federal court granted the proposed injunction, reasoning that allowing plaintiffs to take environmental samples without a protocol for equal access would result in "spoliation of essential and relevant evidence[.]" 293 F.R.D. at 409. On remand to New York state court, however, the Fourth Department intermediate appellate court modified the preliminary injunction and denied the defendants contemporaneous access, finding that "[c]ommunications between plaintiffs' attorneys and their consultants is protected work product" and "communications with their clients is also protected by the attorney client privilege[.]" *Abbo-Bradley*, 3

5

N.Y.S.3d at 843-44. In narrowing the injunction in this manner, the Fourth Department did not explain how contemporaneous access to the sampling site infringed on confidential communications. Although both the federal and state court decisions provide guidance, neither is controlling precedent here.

A party has a duty to preserve environmental samples that will be relevant to litigation and discoverable by the opposing party. *See In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 148 (2d Cir. 2008) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (internal quotation marks omitted); *see also Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 341 (D. Conn. 2009) (ruling because plaintiff "breached its duty to preserve its sampling evidence" from its property, plaintiff could not rely on such evidence at trial in support of its CERCLA and state law claims); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 592 (4th Cir. 2001) (dismissing plaintiff's products liability claim because plaintiff "failed to preserve material evidence" and "thus breach[ed] his duty not to spoliate evidence.").

Defendants assert that the failure to permit contemporaneous access to the sampling site and split sampling will amount to spoliation of essential evidence. They point out that split sampling is a routine practice in environmental litigation and presents a necessary intrusion into an opposing party's investigative work. *See, e.g., United States v. Bridgeport United Recycling, Inc.*, 2008 WL 2073960, at *11 (D. Conn. May 2, 2008) (issuing consent decree in Resource Conservation and Recovery Act claim that provided the United States "upon request, splits of any samples taken by Defendants"); *Nashua Corp. v. Norton Co.*, 116 F. Supp. 2d 330, 344 (N.D.N.Y. 2000) (noting that defendant's consultant "gave [plaintiff's consultant] splits of their [groundwater] samples" in a CERCLA action); *see also Wickens v. Shell Oil Co.*, 569 F. Supp. 2d 770, 777-78 (S.D. Ind. 2008) (observing that magistrate judge permitted defendant contemporaneous access "to allow its environmental consultant to do independent testing."); O'REILLY, *supra*, (stating that "[t]ypically, a negotiated agreement will provide a time and manner of

inspection and will provide for a split sample"). Plaintiffs do not dispute that the environmental conditions where sampling will occur are uncontrolled and volatile, nor do they seriously contest that denying Defendants split samples would prevent Defendants' experts from obtaining a nearly identical sample to compare with Plaintiffs' experts' results. They nonetheless contend that contemporaneous access is not a necessary component of split sampling.

The presence of both parties at the sampling site ensures equal access to evidence and increases the likelihood that such evidence will be admissible at trial through an agreed upon chain of custody. At the same time, it will maintain the status quo in the face of a strong likelihood that both the samples and environmental conditions of the Site will degrade over time. *See, e.g.*, *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 617 (D. Md. 2006) (stating that "[d]efendants will be able to attend the testing" as an "additional safeguard," minimizing "any potential prejudice to defendants resulting from the destructive testing"). Contemporaneous access thus furthers the court's interest in reliable evidence and enhances the likelihood that competing expert results will present an "apples to apples" comparison.

As for Defendants' request that "Plaintiffs and their attorneys [be enjoined] from engaging in any further Environmental Sampling . . . at property of nonparties where such sampling may be relevant to the claims or defenses in this lawsuit," (Doc. 39 at 1-2, ¶ 2), Plaintiffs argue that enjoining non-parties from testing their own property exceeds the proper scope of an injunction. While a preliminary injunction can only bind "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation" with individuals in subsections (A) or (B), Fed. R. Civ. P. 65(d)(2), the injunction here is not directed to non-parties, but solely to their counsel, who are within the proper scope of injunctive relief. The injunction will therefore not directly bind third-parties.[3]

---

[3] However, if third-party potential claimants perform environmental sampling on their own, without the aid or consent of Plaintiffs' counsel, they run the risk that their environmental sampling may be not inadmissible at trial. *See United States v. Vayner*, 769 F.3d 125, 132 (2d

7

Because Defendants have established a likelihood of success in establishing their entitlement to split sampling and contemporaneous access when the merits of the case are heard, they have satisfied the first prong for injunctive relief.

### C. Whether Defendants Will Suffer Irreparable Harm.

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted). The party seeking an injunction "must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent[.]" *Id.* (internal quotation marks omitted).

Without a nearly identical sample to the sample tested by Plaintiffs, Defendants will be unable to assess the validity of Plaintiffs' environmental testing and potentially rebut key evidence. If unable to contemporaneously access the sampling site when Plaintiffs' expert removes a sample, Defendants will be unable to observe the conditions in which a sample was removed and determine how such conditions affect testing results. Denying contemporaneous access while providing split samples after the fact does not address the issue that proper expert evaluation of environmental samples requires observing the precise method and location of extraction. It may also create a contested chain of custody. As a result, without contemporaneous access and split sampling, the potential harm suffered by Defendants will be actual and imminent, constituting irreparable harm in the form of spoliation of the evidence. *See United States v. Sum of $70,990,605*, 991 F. Supp. 2d 154, 163 (D.D.C. 2013) (finding that "[d]estruction of evidence may . . . rise to the level of irreparable harm[.]").

---

Cir. 2014) (citing Fed. R. Evid. 901 which states that a party seeking to admit evidence must provide "evidence sufficient to support a finding that the item is what the proponent claims it is" and vacating judgment where trial court admitted evidence that lacked proper authentication).

### D. Whether the Proposed Injunction Will Violate Plaintiffs' Attorney Work Product, Non-Testifying Expert's Privilege, or Attorney-Client Privilege.

Plaintiffs assert that granting Defendants contemporaneous access to where, when, and whether Plaintiffs conduct environmental sampling will disclose (1) attorney work product, (2) facts known or opinions held by consulting or non-testifying experts, and (3) attorney-client communications. Defendants disagree and assert they are seeking facts, not opinions, and will not infringe upon Plaintiffs' confidential communications with their attorneys or their experts.

#### 1. Attorney Work Product.

A party "may not discover the documents and tangible things that are prepared [by the opposing party or its representative] in anticipation of litigation[.]" Fed. R. Civ. P. 26(b)(3)(A). The work product doctrine preserves a "zone of privacy" where a lawyer can prepare and develop legal strategy for litigation without "unnecessary intrusion" by opposing counsel. *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015). Work product protection may "encompass factual material, including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). If a court orders discovery of work product, it must protect against the disclosure of the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative[.]" Fed. R. Civ. P. 26(b)(3)(B). Whether an otherwise discoverable item is protected work product is a case-by-case determination. *In re Grand Jury Subpoena Dated Oct. 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002).

Although the Fourth Department expressed concern in *Abbo-Bradley* that allowing defendants contemporaneous access to the sampling site would infringe on "protected work product" by allowing access to "[c]ommunications between plaintiffs' attorneys and their consultants[,]" that conclusion did not identify or analyze how this would inexorably occur as the result of contemporaneous split sampling. *Abbo-Bradley*, 3 N.Y.S.3d at 843. There is nothing about the process of split sampling that requires a communication with counsel. The proposed injunction in this case would require

9

Plaintiffs to "preserve and maintain" records already taken. (Doc. 39 at 1, ¶ 1.) It would not require Plaintiffs to reveal the results of their experts' past factual investigations, their future investigations, or their experts' opinions. *See Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 230 (E.D.N.Y. 2007) (distinguishing "between matters revealing the thought processes of a party's representative and factual information obtained in anticipation of litigation" and observing that while "[s]ubstantial protection is afforded the first category [only] [l]imited protection is afforded the second.") (internal quotation marks omitted); *Salzer ex rel. Salzer v. Farm Family Life Ins. Co.*, 721 N.Y.S.2d 409, 411 (N.Y. App. Div. 2001) (stating that New York law "makes clear" that "the attorney work product exception" is "very narrowly construed" to include "only materials prepared by an attorney, acting as an attorney, which contain his analysis and trial strategy[.]") (internal quotation marks omitted). Contemporaneous access to the sampling site will also not give Defendants an "advance look into the deliberative processes by which Plaintiffs and their consultants analyze the merits of their case[,]" (Doc. 42 at 9), as Plaintiffs contend, but rather will reveal only the environmental conditions themselves which are not protected. *See Strauss*, 242 F.R.D. at 230 (stating that work product protection generally does not protect facts). The proposed injunction will therefore not require disclosure of Plaintiffs' attorney work product.[4]

### 2. Non-Testifying Expert Privilege.

Work product protection and the non-testifying expert privilege are distinct doctrines. *See, e.g., In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 293 F.R.D. 568, 575 n.36 (S.D.N.Y. 2013) (distinguishing "the work product privilege" from the "non-testifying expert privilege") (citing *QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co.*, 2011 WL 692982, at *5 (D. Conn. Feb. 18, 2011)) (internal quotation marks

---

[4] In finding that contemporaneous access does not infringe on attorney work product protection, the court need not address whether Defendants have "substantial need" and would suffer "undue hardship" in obtaining equal access to the raw data of environmental sampling. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (stating that protected work product is nevertheless discoverable if "the party shows it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.").

omitted). Plaintiffs assert that Defendants will receive an unfair advantage if they are permitted to obtain the facts known by Plaintiffs' consulting experts prior to Plaintiffs' determination whether they will call those experts at trial.

An opposing party generally may not discover the "facts known or opinions held by an expert who has been retained or specially employed" by the other party in "anticipation of litigation" when the expert "is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). Facts or opinions may nonetheless be discoverable if the opposing party demonstrates "exceptional circumstances" where it is "impracticable for the party to obtain facts or opinions on the same subject by other means." *Id.* at 26(b)(4)(D)(ii). A party meets its burden of demonstrating "exceptional circumstances" when "the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 44 (S.D.N.Y. 1997) (finding "exceptional circumstances" compelled the deposition of a non-testifying expert accountant retained by a corporation investigated for fraud, because it would be impracticable to otherwise reconstruct the disputed financial condition of the corporation for the period at issue); *see also MTBE Prod. Liab. Litig.*, 293 F.R.D. at 575 (stating that "exceptional circumstances" are found "most commonly, in cases of spoliation.").

Because the proposed injunction will not reveal the results of Plaintiffs' experts' opinions or permit Defendants to question Plaintiffs' experts, the proposed injunction will not invade the non-testifying expert privilege.

### 3. Attorney-Client Privilege.

Asserting that the attorney-client privilege precludes Defendants' presence at environmental sampling sites, Plaintiffs point out that they will be unable to freely communicate with their clients and third-party potential claimants during testing if Defendants are present. Under New York law, the attorney-client privilege protects confidential communications between an attorney or his or her agent and the client for the purpose of facilitating legal advice in the course of a professional relationship. *See* N.Y. C.P.L.R. § 4503(a)(1); *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 57

11

N.E.3d 30, 34 (N.Y. 2016) ("The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship[.]"); *see also* Fed. R. Evid. 501 ("[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). In New York, the privilege "must be narrowly construed" because it is "in '[o]bvious tension' with the policy of this State favoring liberal discovery[.]" *Ambac Assurance Corp.*, 57 N.E.3d at 34 (alteration in original).

In this case, access to the sampling site and split sampling will not invade attorney-client communications if certain safeguards are present. For example, if Defendants are ordered to excuse themselves when such communications take place, the likelihood that they will be privy to confidential communications is minimal. *See Electro-Methods, Inc. v. Adolf Meller Co.*, 2007 WL 470325, at *2 (D. Conn Jan. 11, 2007) (finding that "plaintiff's representatives may watch the testing process" but must "remain passive, and not question or otherwise disrupt" defendant's personnel). Plaintiffs present no evidence or argument to the contrary. The court therefore need not determine whether Plaintiffs waived the privilege by disclosing the results of their environmental testing to the press. *See Mfr. & Traders Tr. Co. v. Servotronics, Inc.*, 522 N.Y.S.2d 999, 1004 (N.Y. App. Div. 1987) (holding that "[i]ntent must be the primary component" in considering whether disclosure of materials waived attorney-client privilege). The attorney-client privilege therefore does not foreclose contemporaneous access and split sampling.

### E. Whether the Balance of the Equities Tip in Defendants' Favor and Whether Injunctive Relief is in the Public Interest.

A party seeking a preliminary injunction must show that "the balance of equities tips in his favor" and "that an injunction is in the public interest[.]" *Clapper*, 785 F.3d at 825 (citing *Winter*, 555 U.S. at 20). Here, the proposed injunction strikes the appropriate balance between protecting Plaintiffs' litigation strategies and preventing the spoliation of evidence that will be critical to both parties' case at trial. Plaintiffs will still

control "all aspects of their environmental sampling activities." *Abbo-Bradley*, 293 F.R.D. at 410. Moreover, in order to minimize inconvenience and protect non-party potential claimants' privacy interests, only Defendants' attorney, a party representative, and an expert may be present at the sampling site. This will render the burden imposed by split sampling and contemporaneous access proportionate to the value of ensuring that reliable evidence will be presented at trial. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]").

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion for a preliminary injunction. (Doc. 39.)

## PRELIMINARY INJUNCTION

Plaintiffs and Defendants Town of Wheatfield, Occidental Chemical Corporation, Bell Helicopter Textron, Inc., Saint-Gobain Abrasives, Inc., and Crown Beverage Packaging, LLC, and their counsel of record ("the parties") are hereby ENJOINED as follows:

(1) The parties must preserve and maintain all environmental sampling relevant to any party's claims or defenses that has been previously conducted and any records related to such sampling, including test results, chain of custody, methodologies of preservation used, documents, address keys, field notes, photographs, videos, and electronically stored information.

(2) Each party must serve the opposing party with written notice at least ninety-six hours prior to conducting environmental sampling relevant to any party's claims or defenses or in any way connected with the Site.

(3) Upon service of notice, each party shall provide the other party with contemporaneous access to the sampling site and the opportunity to take split samples. During split sampling, each party may have one attorney, one party representative, and one expert present. The parties may not question the other party's expert or client, nor can a party be present for another party's

13

confidential communications with their attorney or expert. Each party shall act in good faith to absent themselves from such communications. The party engaged in such confidential communications shall act in good faith to minimize any inconvenience to the opposing party.

(4) Plaintiffs have not requested the posting of a bond or other security pursuant to Fed. R. Civ. P. 65(c). The court finds that security may be waived in this case as it is not necessary to prevent harm to the party opposing injunctive relief. *See Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (finding that a district court may dispense with the posting of security where the parties sought to be enjoined "have not shown that they will likely suffer harm absent the posting of a bond[.]").

SO ORDERED.

Dated at Burlington, Vermont, this 6th day of October, 2017.

Christina Reiss, District Judge
United States District Court