UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

ELIZABETH ANDRES, JASON BERENT, RYAN
CALDWELL AND  DEANNA CALDWELL individually
and on behalf of Z.C. and M.C., TODD CARSON,
MICHAEL COLES, DAWN D'AGOSTINO, CORY
D'AGOSTINO, individually and on behalf of G. D.,
CHRISTOPHER DAIGLER, DAVID DAIGLER, KATLIN
DAIGLER, KATHERINE DAIGLER, individually and on
behalf of H.B.D., MICHAEL DIPOTA, ANTHONY
DIPOTA, MARY DIPOTA, NICOLAS DIPOTA, STACEY
DRMOTA, FRED DRMOTA, MEGAN DRMOTA RYAN
FOLLENDORF,       TIMOTHY       FOLLENDORF,
CATHERINE FOLLENDORF,WILLIAM FORTH, GLEN
GEBHARDT, JOLIE GIARDINO, JENNIE GONAS,
RACHEL  KAISER,  JOHN  KEEFE,  GAIL  KING,
individually and on behalf of T. K., J.J.K, BRIANNA
KING,  JOHN  KING,  JANELLE  KING,  ROBERT
KOCSIS, SARAH KRAUS, VARSHA KRAUS, THOMAS
KRUEGER, CINDY KRUEGER, LARRY KRUEGER,
LARRY KRUEGER II, GREGORY LISINSKI, WILLIAM
MAINES, NANCY MAINES, KELLI MEISENBURG,
BETTY NEUMANN, DOUGLAS NEUMANN, ANDREW
NIZIOL, DONALD RICHARDS, DEBRA ROGERS,
KYLE ROGERS, JAMES ROSEBROCK, JOHN SEE,
RENE    SEE,   KATHLEEN    SEE,   KIMBERLY
SOSNOWSKI, individually  and  on  behalf  of  K.S,
JENNIFER STANDISH, DENNIS STICKNEY, DANA
BERENT INDIVIDUALLY AND ON BEHALF OF A.B.
AND  N.B., MELANIE BERENT, CYNTHIA DENICK,
COLBY MOULTRIE, CLINTON MOULTRIE, GERALD
TRUSZKOWSKI,       HOLLY       TRUSZKOWSKI,
STEPHANIE EVANS, MALLORY NIZIOL, DONALD
ROGERS,   LORI   RICHARDS,   CHRISTOPHER
RICHARDS, JASON RICHARDS, KAREN STICKNEY,
SHIRLEY COLES, NICHOLAS COLES, LAUREN
OLEWNIK, CAROLE KEEFE, KARRIE GEBHARDT,
ZACHARY GRAWE, AND CLASS REPRESENTATIVES
BRETT A. GRAWE and REBECCA GRAWE, individually
and on behalf of A.G., B. G., all others similarly situated,

No.: 1:17-cv-00377-CCR

FIRST AMENDED COMPLAINT

*Plaintiffs,*

*-against -*

TOWN OF WHEATFIELD, a municipality located in
Niagara County, New York, Individually and as Successor

in Interest to NIAGARA SANITATION COMPANY;
OCCIDENTAL       CHEMICAL       CORPORATION,
Individually and as Successor in Interest to HOOKER
CHEMICAL AND PLASTICS CORPORATION; BELL
HELICOPTER TEXTRON, INC. individually and as
Successor    in    Interest    to    BELL    AIRCRAFT
CORPORATION; SAINT-GOBAIN ABRASIVES INC.
individually    and    as    Successor    in    Interest    to    the
CARBORUNDUM COMPANY; ROE CONSOLIDATED
HOLDINGS individually and as Successor in Interest to
FRONTIER CHEMICAL PROCESS, INC.; GRAPHITE
SPECIALTIES;   CROWN   BEVERAGE   PACKAGING,
LLC   individually   and   as   Successor   in   Interest   to
CONTINENTAL CAN; AND GREIF, INC. individually
and    as    Successor    in    Interest    to    GREIF    BROS.
COOPERAGE CORPORATION; REPUBLIC SERVICES,
INC. individually and as Successor in Interest to NIAGARA
SANITATION      COMPANY,      INC.;      HONEYWELL
INTERNATIONAL INC.  individually and as Successor in
Interest    to    BELL    AEROSPACE;    PYROTEK
INCORPORATED individually and as Successor in Interest
to the CARBORUNDUM COMPANY,

*Defendants.*
----------------------------------------------------------------------X


## **COMPLAINT**

Plaintiffs,  Elizabeth Andres, Jason Berent,  Ryan Caldwell, Zachary Caldwell, Mathew

Caldwell, Deanna Caldwell, Todd Carson, Michael Coles, Dawn D'Agostino, Cory D'Agostino,

individually and on behalf of G. D., Christopher Daigler, David Daigler, Katlin Daigler,

Katherine Daigler, individually and on behalf of H.B.D., Michael DiPota, Anthony DiPota, Mary

DiPota, Nicolas DiPota, Stacey Drmota, Fred Drmota, Megan Drmota Ryan Follendorf, Timothy

Follendorf, Catherine Follendorf, William Forth, Glen Gebhardt, Jolie Giardino, Jennie Gonas,

Rachel Kaiser, John Keefe, Gail King, individually and on behalf of T. K., J.J.K, Brianna King,

John King, Janelle King, Robert Kocsis, Sarah Kraus, Varsha Kraus, Thomas Krueger, Cindy

Krueger, Larry Krueger, Larry Krueger II, Gregory Lisinski, William Maines, Nancy Maines,

Kelli Meisenburg, Betty Neumann, Douglas Neumann, Andrew Niziol, Donald Richards, Debra Rogers, Kyle Rogers, James Rosebrock, John See, Rene See, Kathleen See, Kimberly Sosnowski, individually and on behalf of K.S.,  Jennifer Standish, Dennis Stickney, ("Plaintiffs"), and Class Representatives BRETT A. GRAWE and REBECCA GRAWE, and their minor children, A.G and B.G,  individually and on behalf of all others similarly situated, (the "Class" or "Class Members") by and through their attorneys, NAPOLI SHKOLNIK PLLC, SMITH STAGG L.L.C. and Christen Civiletto Esq., for their first amended complaint against Defendants the TOWN OF WHEATFIELD individually and as Successor in Interest to NIAGARA SANITATION COMPANY, OCCIDENTAL CHEMICAL CORPORATION, Individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION, BELL HELICOPTER TEXTRON, INC. individually and as Successor in Interest to BELL AIRCRAFT CORPORATION, SAINT-GOBAIN ABRASIVES INC. individually and as Successor in Interest to the CARBORUNDUM COMPANY, ROE CONSOLIDATED HOLDINGS individually and as Successor in Interest to FRONTIER CHEMICAL PROCESS, INC., GRAPHITE SPECIALTIES, CROWN BEVERAGE PACKAGING, LLC individually and as Successor in Interest to CONTINENTAL CAN, AND GREIF, INC. individually and as Successor in Interest to GREIF BROS. COOPERAGE CORPORATION, REPUBLIC SERVICES, INC. individually and as Successor in Interest to NIAGARA SANITATION COMPANY, INC., HONEYWELL INTERNATIONAL INC. individually and as Successor in Interest to BELL AEROSPACE, and PYROTEK INCORPORATED individually and as Successor in Interest to the CARBORUNDUM COMPANY ("Defendants"), state and allege the following upon information and belief, except as to the allegations, which pertain to the Plaintiffs and the Class, which are alleged upon personal knowledge.   Plaintiffs' information and belief are based upon; *inter alia*, the

investigation made by and through their attorneys.  Plaintiffs, by and through their attorneys as and for their first amended complaint, hereby state and allege:

## NATURE OF ACTION

1.      This Complaint states individual and class claims pursuant to 42 U.S.C. § 1983; the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq.; and state law for negligence strict liability, nuisance, trespass, property damage, response costs, declaratory relief, and is seeking medical monitoring, damages in excess of the jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys' fees.

2.      Defendant, TOWN OF WHEATFIELD, individually and as Successor in Interest to NIAGARA SANTITATION COMPANY ("WHEATFIELD"), is a municipality subject to the authority of New York statutes, located in Niagara County, in the State of New York.

3.      Defendant, OCCIDENTAL CHEMICAL CORPORATION, individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION ("OCCIDENTIAL/HOOKER"), is headquartered at 5005 LBJ Freeway, Dallas, Texas 75244-9050.  The OCCIDENAL CHEMICAL CORPORATION plant that produced Love Canal waste that was dumped at the Nash Road Landfill is located at 4700 Buffalo Ave, Niagara Falls, New York 14304.

4.      Defendant, BELL HELICOPTER TEXTRON, INC. individually and as Successor in Interest to BELL AIRCRAFT CORPORATION ("BELL"), is headquartered at 3255 Bell Helicopter Boulevard Fort Worth, Texas, 76118.  BELL was founded in 1935 in Buffalo, New York.  At all times material to the allegations herein Bell was doing business in the State of New York.

5.      SAINT-GOBAIN ABRASIVES INC. individually and as Successor in Interest to the CARBORUNDUM COMPANY ("SAINT-GOBAIN"), is headquartered at 1 New Bond Street, Worcester, Massachusetts, 01617.    CARBORUNDUM was started in Pennsylvania in 1890 and moved to Niagara Falls New York in 1895.   At all times material to the allegations herein CARBORUMNDUM was doing business in the State of New York.

6.      ROE CONSOLIDATED HOLDINGS individually and as Successor in Interest to FRONTIER CHEMICAL PROCESS, INC ("FRONTIER"), is headquartered at 4390 Paletta Crt Burlington, Burlington, ON L7L 5R2, Canada.  FRONTIER CHEMICAL was located at 4626 Royal Avenue, Niagara Falls New York.

7.      GRAPHITE SPECIALTIES CORP., on information and belief, operated a manufacturing facility in Niagara Falls, New York.  At all times material to the allegations herein, GRAPHITE SPECIALTIES CORP. was doing business in the State of New York.

8.      CROWN BEVERAGE PACKAGING, LLC individually and as Successor in Interest to CONTINENTAL CAN ("CONTINENTAL"), is headquartered at 1 Crown Way, Philadelphia, Pennsylvania, 19154-4599.  CONTINENTAL CAN was incorporated in New York in 1913.  At all times material to the allegations herein, CONTINENTAL CAN was doing business in the State of New York.

9.      GREIF, INC individually and as Successor in Interest to GREIF BROS. COOPERAGE CORPORATION ("GREIF"), is headquartered at 425 Winter Road, Delaware, Ohio, 43015.  GREIF BROS. COOPERAGE CORPORATION had a plant in Niagara Falls, Canada.    At all times material to the allegations herein, GREIF BROS. COOPERAGE CORPORATION was doing business in the State of New York.

10.     REPUBLIC SERVICES, INC. individually and as Successor in Interest to NIAGARA SANITATION COMPANY, INC.; is headquartered at 18500 North Allied Way,

Phoenix, Arizona, 85054.   REPUBLIC SERVICES, INC. is a foreign business corporation registered to do business in New York. At all times material to the allegations herein, NIAGARA SANTITATION COMPANY, INC. was doing business in the State of New York.

11.    HONEYWELL INTERNATIONAL INC. individually and as Successor in Interest to BELL AIRCRAFT CORPORATION; is headquartered at 115 Tabor Road, Morris Plains, New Jersey 07960.   HONEYWELL INTERNATIONAL INC. is a foreign business corporation registered to do business in New York. At all times material to the allegations herein BELL was doing business in the State of New York.

12.    PYROTEK INCORPORATED individually and as Successor in Interest to the CARBORUNDUM COMPANY, is headquarters at 705 West 1st Avenue, Spokane, Washington 99201.   PYROTEK INCORPORATED is a foreign business corporation registered to do business in New York. At all times material to the allegations herein Carborundum Company was doing business in the State of New York.

13.    The Plaintiffs have complied with all conditions precedent prior to bringing an action against a government entity by submitting Notice of Claims pursuant to New York General Municipal Law § 50-e and §50-h.

14.    Plaintiffs have properly served the Town of Wheatfield in compliance with New York General Municipal Law § 50-e and §50-h on or before February 27, 2017.  All Plaintiffs have:  i) filed their initial state complaint in this action thirty (30) days after filing their Notice of Claim and before a demand for hearing was served; or ii) were served a demand for hearing to be held June 5, 2017, which hearings were adjourned by defendant Town *sine die* for all claimants and ninety (90) days have elapsed without a subsequent demand for hearing.

## JURISDICTION

15.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal questions; 28 U.S.C. §1343(a)(3) and (4), which authorizes federal courts to hear civil rights cases; and 28 U.S.C. § 2201, the Declaratory Judgment Act and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

16.    This Court has jurisdiction over the subject matter of the Counts I, II, and III pursuant to § 113(b) of CERCLA, 42 U.S.C. § 9613(b); the Declaratory Judgment Act, 28 U.S.C. § 2201; and federal question jurisdiction, 28 U.S.C. § 1331.

17.    This Court has jurisdiction over the subject matter of the Counts IV and V pursuant to 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. § 2201; and federal question jurisdiction, 28 U.S.C. § 1331.

18.    This Court has supplemental jurisdiction over Counts V, VI, VII, VIII and IX under 28 U.S.C. § 1367 because the state law negligence, strict liability, nuisance and trespass claims are so related to the federal claims in this action that they form the same case and controversy under Article III of the United States Constitution.

19.    This Court has personal jurisdiction over the Defendants as each of them, for the events and happenings referred to herein, were doing business in New York and/or owned property in New York, or had its chemical waste transported to the Nash Road Landfill, such that it is reasonably foreseeable that they would be subject to the jurisdiction of the courts of this state.

## VENUE

20.    This case is properly venued in this Court because the actions of the Defendants or their predecessors, and the injuries and damages alleged herein all occurred in the County of Niagara, New York.

21.     Venue is proper in the Western District of New York pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C § 1391(b) because the actual and threatened endangerments, releases, injuries, and damages at issue are taking place and have taken place in this district.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

22.     This is an action brought by and on behalf of Plaintiffs and the Class members arising out of the prior and continuing release, discharge, and deposit of toxic and hazardous substances and contaminants onto Plaintiffs' properties and persons, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and polychlorinated biphenyls (PCBs).

23.     At the time of exposure and resulting injuries complained of herein, Plaintiffs and Class members have been either the current or previous owners and/or occupants of certain real property, consisting of various lands and various types of residences located in Niagara County, New York that are located near the real property and facilities of approximately twenty-five (25) acres on 7415 Nash Road Wheatfield, NY, situated immediately north of the City of North Tonawanda city limits and east of Nash Road; it was known as the Nash Road Landfill ("the Site").

24.     The Site was operated by the Niagara Sanitation Company between 1964 and 1968 for disposal of municipal and industrial wastes.  It was and is currently owned by the Town of Wheatfield.   After a rainfall, the Site accumulates water that flows onto adjacent private property and into the sewer system.

25.     The Site is a closed, unlined, uncapped landfill that had been used by the Niagara Falls Air Force Base, Bell Aerospace, Carborundum Corporation, Frontier Chemical, Graphite

Specialties, Continental Can, and Greif Brothers, as well as local municipalities to dispose of municipal, industrial and hazardous waste including metals, polycyclic aromatic hydrocarbons, polychlorinated biphenyls, pesticides, caustics, and plating tank sludge.

26.    In 1968 approximately 1,600 cubic yards of Love Canal waste, material from Hooker Chemical and Plastics Corporation that was excavated from the Love Canal Landfill (later a Superfund Site), was dumped at the Site.  Shortly thereafter waste disposal activities at the Site ended and the nature of the hazardous waste within was not disclosed to the surrounding neighbors.

27.    The Site, which in appearance is a normal area of woods or forest, is located directly adjacent to homes.  The Site is unimproved and apparently unused and, during all times relevant to this action, contained no fence or signage limiting access.

28.    The Site was used recreationally by area residents – including Plaintiffs – for decades.  Activities undertaken by near-by residents and Plaintiffs include, but are not limited to, walking, bike riding, riding of all-terrain vehicles, motorized dirt bikes, fishing, hunting, trapping and dog-walking.

29.    The use of bikes and motorized vehicles created airborne migration material from the Site during dry conditions.  During wet conditions or when there was standing water at the Site, material was carried off-site as "mud" on shoes, vehicles and pets.

30.    In 1981 the Niagara County Department of Health conducted an investigation and concluded that "[t]he potential for migration of chemicals off-site is present." Noting the proximity of the homes on Forbes Road, the Department of Health recommended that the town of Wheatfield conduct an abatement and required that the landfill be properly closed.  This was not done.

31.     A 1988 EPA Site Inspection Report stated that hazardous waste excavated from the Love Canal Landfill was disposed of at the Site in a trench of soft, layered clay and that no engineered barriers were installed.   The excavated materials were placed into a trench at the northeast end of the Site that was excavated into underlying clay and then covered with soil. Water samples taken at the Site revealed benzene at 4500 mg/L, chlorobenze at 590 mg/L, toluene at 14,000 mg/L, and acetone at 2,300 mg/L.  Samples of Lead in the landfill ranged from 67 to 20,000 ppb.

32.     The 1988 EPA Site Inspection Report indicated that the Site was flat and drainage was poor, and prior to the dumping, the Site was a swamp.  It also indicated that 1) groundwater was contaminated and that the population would be potentially affected; 2) that surface water and soils were "rusty" in appearance and methylene chloride, total organic halogens and toluene were detected, and 3) that soil samples contained metal and organic contamination; 4) that it had been observed that the Site was used by local residents as a play area and that some local residents were believed to draw water from the contaminated aquifer; and 5) that pools of orange tinted standing water were observed and rubbish was protruding out of the ground.

33.     A Phase II Investigation was performed in 1989 for the Division of Hazardous Waste Remediation at the New York State Department of Environmental Conservation ("DEC"). Its recommendations indicated that the shallow groundwater at the site contained significant contamination of toxic organic compounds and metals and that there was a potential for the contaminants to migrate off the site.  It stated that additional work should be performed to determine the potential for off-site migration and whether or not it was presently occurring, including a soil vapor survey and off-site wells, and that the Site should be capped and a fence constructed to limit public access to the site.   Work conducted to the date of the report had not included a determination of whether the disposal trenches dug for the Love Canal waste had

breached the clay layer exposing the regional aquifer underneath the Site; therefore the Report recommended an investigation to make this determination.

34.    Despite the above delineated reporting, no action was taken and none of the recommendations were performed.  The Site remained just as it was. The adjacent community was not informed of any findings, directives or reporting. Thus the community was not warned of the danger to persons and property, and therefore continued to use the unfenced Site for recreational activities.

35.    On December 21, 2015 the New York Department of Environmental Conservation ("DEC") issued a Public Notice pursuant to the State Superfund Program: "Inactive Hazardous Waste Disposal Site Classification Notice", which stated in part:

> As of the date of this notice, the site identified above, and located on a map on the reverse side of this page, was reclassified on the Registry as a Class 2 site that presents a significant threat to public health and/or the environment for the following reason(s): The site is a former municipal and industrial landfill that accepted waste from multiple sites, including Niagara Falls Air Force Base, Bell Aerospace, Carborundum, Frontier Chemical, Graphite Specialties, Continental Can, and Grief Brothers. Site contaminants include metals, polycyclic aromatic hydrocarbons, polychlorinated biphenyls, pesticides, caustics, and plating tank sludge. The landfill does not have a Part 360 cap or access restrictions. Both conditions indicate a concern for potential exposures to people who enter the site. This exposure concern has been documented as people are using the landfill as a jogging and play area. Dirt bike trails are evident throughout the site and use of such has resulted in landfill materials to become exposed at the surface. Therefore, the site represents a significant threat to the environment and public health. If you own property adjacent to this site and are renting or leasing your property to someone else, please share this information with them.

36.    Defendant Town of Wheatfield was fully aware that the Site contained an unknown quantity of toxic chemicals, toxic contaminants and waste, industrial solvents and sludge, and banned pesticides, including but not limited to Aldrin, arsenic, barium, benzo-

trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin,  endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.  Despite having knowledge of the hazardous nature of the chemicals at the Site, and despite being directed by environmental and health authorities to address site access and exposure, Defendant Town of Wheatfield left the Site abandoned for decades, without proper cleanup, oversight, or management, with no signage as to the danger, no fencing of the property to prevent access, and without engineering controls to prevent seepage and transport of contamination on to the surrounding properties.

### The Contaminants

37.     Aldrin is an extremely hazardous (pursuant to 42 U.S.C. 11002) organochlorine insecticide that was derived from hexachlorocyclopentadiene, a persistent organic pollutant.  It was banned in the 1970s.

38.     Arsenic is identified by the World Health Organization (WHO), the Department of Health and Human Services (DHHS), and Environmental Protection Agency (EPA) as a human carcinogen.   Exposure to even low levels of Arsenic is known to lead to adverse human health effects.   Arsenic increases the risk of lung, skin, bladder, liver, kidney and prostate cancers.

39.     Barium is a metal that can be found in the environment. Small amounts of water-soluble barium may cause breathing difficulties, increased blood pressure, heart rhythm changes, stomach irritation, muscle weakness, changes in nerve reflexes, swelling of brains and liver, kidney and heart damage.

40.     Benzo-trichlorides are classified as extremely hazardous substances (pursuant to 42 U.S.C. 11002) and have been classified as a Group B2, probable human carcinogen. The substance may have effects on the lungs, liver, kidneys and thyroid.

41.    Cadmium is a known human carcinogen. It is an extremely toxic metal commonly used in electroplating.  Cadmium exposure may also affect lungs and kidneys, resulting in kidney impairment.

42.    Caustics are chemicals that are capable of burning or corroding by chemical action.

43.    Chlorobenzenes are irritating to the eyes and the skin and may cause central nervous system effects. Animal reproduction studies on Chlorobenzene have shown an adverse effect on the fetus.

44.    Chlordane is an extremely hazardous substance (pursuant to 42 U.S.C. § 11002) and has been classified as a Group B2, probable human carcinogen. It was used as a pesticide in the United States from 1948 until it was banned in 1988.   Chlordane exposure is a risk factor for type-2 diabetes, prostate cancer, testicular cancer and breast cancer.

45.    Chromium used in electroplating and chemical manufacture and may cause  heritable genetic damage to human germ cells and effect human reproduction or development. It can cause skin rashes, ulcers, weakened immune systems, kidney and liver damage, and Lung cancer.

46.    Dieldrin is considered by NIOSH to be a potential occupational carcinogen. Dieldrin accumulates in the body cause possible cumulative  effects.

47.    Hexachlorocyclohexane is a possible human carcinogen.  It may effect the central nervous system, bone marrow, liver, sex hormones and genital system. Animal tests show that this substance possibly causes toxic effects upon human reproduction.

48.    Lindane is an extremely hazardous substance (pursuant to 42 U.S.C. 11002) and is a neurotoxin that may cause effects on the central nervous system. Lindane exposure may

result in death. Tumors have been detected in experimental animals indicating that it may have effects on the liver in humans.

49.     Lead affects almost every organ and system in the human body; it can damage organs, cause permanent developmental disabilities, seizures, coma, and even death.   Lead exposure has its strongest effect on children and child brain development.   Children exposed to even low levels of lead often develop difficulties learning, and if the exposure does not stop, the damage will continue and is permanent.  The Centers for Disease Control (CDC) has determined that no safe blood lead level in children has been identified.[1]

50.     Mercury exposure can cause brain, kidney, and lung damage and may seriously harm a developing fetus. Exposure to even low levels of airborne mercury for prolonged periods of time can cause irritability, sleep disturbances, excessive shyness, tremors, coordination problems, changes in vision or hearing, and memory problems.

51.     Petroleum products, including hexane, benzene, toluene, xylenes, naphthalene, and fluorine, may cause damage to the lungs, central nervous system, liver, and kidneys. Some petroleum compounds have also been shown to affect reproduction and the developing fetus in animals. Benzene is a known human carcinogen.

52.     Phenol is an extremely hazardous substance (pursuant to 42 U.S.C. 11002) and can cause respiratory irritation, headaches, and burning eyes. People who had skin exposure to high amounts of phenol had skin burns, liver damage, irregular heart beat, and some died. Ingestion of high concentrations of phenol has resulted in internal burns and death.

53.     Plating tank sludge contains heavy metals, oil and grease and suspended solids at hazardous levels.

---

[1] See: http://www.cdc.gov/nceh/lead/

54.    PAHs.  The Centers for Disease Control and Prevention characterize PAHs as probable carcinogens, associated with risk of lung, genitourinary, and skin cancers.

55.    PCBs are an odorless group of volatile synthetic organic chemicals and are either oily liquids or solids.  PCBs enter the environment as mixtures containing a variety of individual chlorinated biphenyl components, known as congeners, as well as impurities.

56.    Once released into the environment, PCBs do not readily break down and therefore remain for long periods of time cycling between air, water, and soil.

57.    PCBs have been demonstrated to cause cancer, as well as a variety of other adverse health effects on the immune system, reproductive system, nervous system, and endocrine system. The manufacture of PCBs was stopped in the U.S. in 1977 because of evidence they build up in the environment and can cause harmful health effects.

58.    Upon information and belief, all the above-referenced contaminants, and their derivatives, in amounts and concentrations above State and Federal residential safety levels, were and continue to be released, discharged, and disbursed throughout the neighborhood from the Site.

59.    The contamination has been allowed to migrate onto Plaintiffs' and Class Members' properties, causing Plaintiffs and the Class to suffer ongoing injuries, including significant health impairments and damage to their properties, as well as putting them at high risk for future, latent diseases and cancers.

60.    The contamination continues to be released, dispersed or otherwise discharged via surface water, groundwater, air and other manners onto Plaintiffs' and Class Members' properties and persons to the present date.

61.     As of the date of this filing the Town of Wheatfield and the DEC continue to state publicly that there is no cause for concern, that contamination has not been released outside of the Site on to private property, and that there has been no impact to residents' property or health.

## PLAINTIFFS

62.     The Plaintiffs are current or previous owners of residential property, or current or previous renters of residential property who have lived in the affected area for at least one (1) year.

63.     Plaintiff Elizabeth Andres lived at 1310 Forbes Street North Tonawanda, NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

64.     Plaintiff Jason Berent lived at 10 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

65.     Plaintiff Deanna Caldwell lived at 68 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

66.     Plaintiff Deanna Caldwell, as natural parent of M.C., lived at 68 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

67.     Plaintiff Deanna Caldwell, as natural parent of Z.C. lived at 68 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

68.    Plaintiff Ryan Caldwell lived at 68 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

69.    Plaintiff Todd Carson lives at 1635 Nash Road  North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

70.    Plaintiff Michael Coles lives at 1603 Nash Road North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

71.    Plaintiff Cory D'Agostino lives at 1400 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

72.    Plaintiff Dawn D'Agostino lives at 1400 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

73.    Plaintiff Dawn D'Agostino, as natural parent of G. D. lives at 1400 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

74.    Plaintiff Christopher Daigler lives at 1619 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

75.    Plaintiff David Daigler lives at 1619 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

76.     Plaintiff Katherine Daigler lives at 1619 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

77.     Plaintiff Katherine Daigler as natural parent of H.B.D. lives at 1619 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

78.     Plaintiff Katlin Daigler lived at 1619 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

79.     Plaintiff Anthony DiPota lived at 1430 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

80.     Plaintiff Mary DiPota lived at 1430 Forbes Street North Tonawanda, NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

81.     Plaintiff Michael DiPota lived at 1430 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

82.     Plaintiff Nicolas DiPota lived at 1430 Forbes Street North Tonawanda NY 14120, for 24 years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

83.     Plaintiff Fred Drmota lives at 93 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

84.     Plaintiff Megan Drmota lives at 93 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

85.     Plaintiff Stacey Drmota lives at 93 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

86.     Plaintiff Catherine Follendorf lives at 1388 Forbes Street  North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

87.     Plaintiff Ryan Follendorf lived at 1388 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

88.     Plaintiff Timothy Follendorf lives at 1388 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

89.     Plaintiff William Forth lived at 1478 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

90.     Plaintiff Glen Gebhardt lives at 50 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

91.     Plaintiff Jolie Giardino lived at 111 Forbes Terrace Tonawanda NY 14150, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

92.     Plaintiff Jennie Gonas lives at 80 Forbes Terrace N. Tonawanda, NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

93.     Plaintiff Rachel Kaiser lived at 80 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

94.     Plaintiff John Keefe lives at 32 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

95.     Plaintiff Brianna King lives at 1291 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

96.     Plaintiff Gail King lives at 1291 Forbes Street North Tonawanda, NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

97.     Plaintiff Gail King, as natural parent of J.J.K. lives at 1291 Forbes Street  North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

98.     Plaintiff(s) Gail King, as natural parent of T.S.K. lives at 1291 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

99.     Plaintiff Janelle King lives at 1291 Forbes Street  North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

100.    Plaintiff John King lives at 1291 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

101.    Plaintiff Robert Kocsis lived at 44 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

102.    Plaintiff Sarah Kraus lives at 1676 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

103.    Plaintiff Varsha Kraus lives at 1676 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

104.    Plaintiff Cindy Krueger lives at 1360 Forbes Street  North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring

105.    Plaintiff Larry Krueger lives at 1360 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

106.    Plaintiff Thomas Krueger lived at 1360 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

107.    Plaintiff Larry Krueger II lived at 1360 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

108.    Plaintiff Nancy Maines lives at 26 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

109.    Plaintiff William Maines lives at 26 Forbes Terr.  North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

110.    Plaintiff Kelli Meisenburg lived at 1388 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

111.    Plaintiff Betty Neumann lives at 1151 Nash Rd. North Tonawanda, NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

112.    Plaintiff Douglas Neumann lived at 1472 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

113.    Plaintiff Andrew Niziol lived at 128 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

114.    Plaintiff Donald Richards lives at 1283 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

115.    Plaintiff Debra Rogers lives at 1299 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

116.    Plaintiff Kyle Rogers lives at 1299 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

117.    Plaintiff James Rosebrock lived at 1310 Forbes St North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

118.    Plaintiff John See lives at 1625 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

119.    Plaintiff Kathleen See lives at 1625 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring

120.    Plaintiff Rene See lives at 1625 Nash Rd North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

121.    Plaintiff Kimberly Sosnowski lived at 1389 Forbes St North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

122.    Plaintiff Kimberly Sosnowski, as natural parent of K.S. lived at 1389 Forbes St North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site and has personal injuries and seeks medical monitoring.

123.    Plaintiff Jennifer Standish lives at 1444 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

124.    Plaintiff Dennis Stickney lives at 18 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

125.    Plaintiff Dana Berent lived at 10 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

126.    Plaintiff Dana Berent, as natural parent of A.B., lived at 10 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

127.    Plaintiff Dana Berent, as natural parent of N.B., lived at 10 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

128.    Plaintiff Melanie Berent lives at 3562 Trails End Lane North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

129.    Plaintiff Cynthia Denick lives at 1627 Moll Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

130.    Plaintiff Colby Moultrie lives at 1627 Moll Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

131.    Plaintiff Clinton Moultrie lives at 1627 Moll Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

132.    Plaintiff Gerald Truszkowski lives at 136 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

133.    Plaintiff Holly Truszkowski lives at 136 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

134.    Plaintiff Stephanie Evans lived at 1603 Nash Road North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

135.    Plaintiff Mallory Niziol lived at 128 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

136.    Plaintiff Donald Rogers lives at 1299 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

137.    Plaintiff Lori Richards lives at 1283 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

138.    Plaintiff Christopher Richards lives at 1283 Forbes Street North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

139.    Plaintiff Jason Richards lived at 1283 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

140.    Plaintiff Karen Stickney lives at 18 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site and has personal injuries and property damage and seeks medical monitoring.

141.    Plaintiff Shirley Coles lives at 1603 Nash Road North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

142.    Plaintiff Nicolas Coles lived at 1603 Nash Road North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

143.    Plaintiff Lauren Olewnik lived at 32 Forbes Terrace North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for several years and has personal injuries and seeks medical monitoring.

144.    Plaintiff Carole Keefe lives at 32 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

145.    Plaintiff Zachary Grawe lived at 1464 Forbes Street North Tonawanda NY 14120, for years and had substantial exposure to the contamination from the Site for eighteen (18) years and has personal injuries and seeks medical monitoring.

146.    Plaintiff Karrie Gebhardt lives at 50 Forbes Terrace North Tonawanda NY 14120, has substantial exposure to the contamination from the Site for several years and has personal injuries and property damage and seeks medical monitoring.

## CLASS REPRESENTATIVES

147.    Plaintiffs Brett A. Grawe and Rebecca Grawe currently reside in North Tonawanda, New York.    Brett and Rebecca Grawe  lived at 1464 Forbes Street, North Tonawanda, New York for approximately twenty-six (26) years.  They bought the home on March 1, 1990, and it is adjacent to the Site.

148.    Mr. Grawe regularly spent time in the yard and ingested, inhaled, and had direct dermal contact with surface and subsurface soil and materials. Mr. Grawe regularly walked on the Site property and inhaled and had direct dermal contact with surface soil, standing water and materials at the Site. Subsequently Mr. Grawe was diagnosed with aggressive liver cancer and liver disease.   As a result of Defendants' negligence in the processing, distribution, transporting, storing, handling and/or disposing of hazardous substances into the area surrounding his home, Mr. Grawe has developed significant debilitating personal injuries, as well as damage to his personal property.  As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mr. Grawe has suffered and continues to suffer severe physical injury, pain, and suffering.  Mr. Grawe brings suit against each Defendant named herein for each cause of action listed herein and seeks general damages directly and foreseeably resulting from Defendants' actions, consequential damages, and exemplary or punitive damages as allowed by law and in an amount to be proved at trial.

149.    Mrs. Rebecca Grawe grew up on 80 Forbes Terrace, and has lived her entire life in this area.   She regularly spent time in the yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials. As a child, Mrs. Grawe played on the Site property and inhaled and had direct dermal contact with surface soil, standing water and materials at the Site. Subsequently, Mrs. Grawe was diagnosed with neuropathy and Renaud's syndrome. As a result of Defendants' negligence in the processing, distribution, transporting,

storing, handling and/or disposing of hazardous substances into the area surrounding her home, Mrs. Grawe has developed significant debilitating personal injuries, as well as damage to her personal property.  As a result of Defendants' reckless, negligent, and grossly negligent conduct, Mrs. Grawe has suffered and continues to suffer severe physical injury, pain, and suffering.  Mrs. Grawe brings suit against each Defendant named herein for each cause of action listed herein and seeks general damages directly and foreseeably resulting from Defendants' actions, consequential damages, medical monitoring, and exemplary or punitive damages as allowed by law and in an amount to be proved at trial.

150.    A.G., minor child of Brett and Rebecca Grawe, has lived her entire life at the family home at 1464 Forbes Street.   A.G. was born with oligodontia, missing 13 of her permanent teeth.  As a result of Defendants' reckless, negligent, and grossly negligent conduct, A.G. has suffered and continues to suffer severe physical injury, pain, and suffering.    Mr. and Mrs. Grawe bring suit on behalf of A.G. against each Defendant named herein for each cause of action listed herein and seeks general damages directly and foreseeably resulting from Defendants' actions, consequential damages, and exemplary or punitive damages as allowed by law and in an amount to be proved at trial.

151.    B.G., minor child of Brett and Rebecca Grawe, has lived his entire life at the family home at 1464 Forbes Street.  B.G.  was born with infantile hypertrophic pyloric stenosis As a result of Defendants' reckless, negligent, and grossly negligent conduct, B.G. has suffered and continues to suffer severe physical injury, pain, and suffering.  Mr. and Mrs. Grawe bring suit on behalf of B.G. against each Defendant named herein for each cause of action listed herein and seeks general damages directly and foreseeably resulting from Defendants' actions, consequential damages, medical monitoring, and exemplary or punitive damages as allowed by law and in an amount to be proved at trial.

152.    The Plaintiff and the Class causes of action related to contamination and exposure are continuing in nature.  Plaintiffs and the Class have and continue to engage in activities on their properties that require them to come into direct contact with subsurface and surface soil.

153.    Plaintiffs and the Class were personally exposed and continue to be exposed to hazardous and toxic substances, contaminants, and pollutants from the above mentioned Site via ingestion, inhalation, and or/dermal contact, during normal day activities such as walking in the neighborhood and the Site property, gardening and doing yard work, playing in their yards, as well as living in their homes.

154.    Plaintiffs and the Class are an 'exposed population' as defined in Section 6.8.1 of the ATSDR Public Health Assessment Guidance Manual as follows:

155.    A population is considered exposed if a completed exposure pathway, which links a contaminant with a receptor population, exists in the past, present, or future. An exposed population includes persons who ingest, inhale, or contact site contaminants or are exposed to radiation in the past, present, or future. Examples of exposed persons include those who:

- *have ingested, are ingesting, or will ingest the contaminant from one or more environmental media;*
- *have inhaled, are inhaling, or will inhale the contaminant from one or more environmental media;*
- *have contacted, are contacting, or will contact the contaminant in one or more environmental media; and*
- *were exposed, are exposed, or will be exposed to gamma radiation from one or more environmental media.*

*If an environmental medium (soil) contains a contaminant of concern at a point of exposure (a residential yard), and evidence already exists that a route of exposure (ingestion) has occurred, is occurring, or will occur, the health assessor should assume that persons living at that residence are exposed or will be exposed. If the residential yard contains a vacant house, the health assessor should assume that future residents will be exposed. Persons should also be considered exposed if exposure has been verified by human biologic measurements or medical examination. For health assessments, human biologic measurements or medical examination are not necessary for the assignment of an exposure category to a population.*

## **DEFENDANTS**

156.    Defendant, TOWN OF WHEATFIELD, individually and as Successor in Interest to NIAGARA SANTITATION COMPANY ("WHEATFIELD"), is a municipal corporation founded in 1836 located in the southern portion of Niagara County, New York.

157.    WHEATFIELD is now and at all times relevant to this action was the owner of the Nash Road Landfill.

158.    WHEATFIELD at all times relevant to this action was the operator of the Nash Road Landfill.

159.    Upon information and belief, the Nash Road Landfill operated from approximately 1955 to 1969.  During all time relevant to this action WHEATFIELD, as owner of the Landfill, contracted with NIAGARA SANTITATION COMPANY to operate said Landfill on behalf of WHEATFIELD.

160.    Upon information and belief, defendant WHEATFIELD accepted chemical, industrial, and hazardous waste for disposal at the Nash Road Landfill.

161.    Defendant WHEATFIELD did not adequately control the Landfill or properly segregate the chemical waste from regular municipal waste.

162.    Defendant, OCCIDENTAL CHEMICAL CORPORATION, individually and as Successor in Interest to HOOKER CHEMICAL AND PLASTICS CORPORATION ("OCCIDENTIAL/HOOKER"), is a wholly owned subsidiary of Occidental Petroleum Corporation,  and is a leading chemical manufacturer that has continually operated a chemical plant in Niagara Falls, New York, for over one hundred years.

163.    Defendant OCCIDENTAL/HOOKER is infamous for having created one of the worst hazardous chemical disasters in United States history: Love Canal.

164.    OCCIDENTAL/HOOKER's dumping of tens of thousands of tons of chemicals in Niagara County resulted in a federal health emergency and lead to federal legislation to address hazardous waste dump sites (Superfund).

165.    Upon information and belief, defendant OCCIDENTAL/HOOKER knew or should have known that Love Canal waste was transferred from the Love Canal site and disposed at the Nash Road Landfill.

166.    On or about 1969-1970, defendant Occidental/Hooker constructed a brine/salt pipeline to transmit brine from mines in Wyoming, New York to its facility in Niagara Falls, New York.  The approximately fifty-mile pipeline travels through the southern border of the site along the National Grid/Niagara Mohawk right of way, east-west parallel to Forbes Street.  Defendant Occidental/Hooker has continuously owned and operated this pipeline and is responsible for its repair and maintenance. The disturbed soil and pipeline bedding has provided an additional  pathway for site contamination in liquid and vapor forms to travel off-site and into the Plaintiffs' neighborhood.

167.    Defendant, BELL HELICOPTER TEXTRON, INC., individually and as Successor in Interest to BELL AIRCRAFT CORPORATION ("BELL"),  is an industry-leading producer of commercial and military, vertical-lift aircraft and operated an aircraft manufacturing plant in Wheatfield, New York during all times relevant to this action.

168.    Upon information and belief, defendant BELL disposed of industrial and/or chemical waste at the Nash Road Landfill.

169.    Defendant, SAINT-GOBAIN ABRASIVES INC., individually and as Successor in Interest to the CARBORUNDUM COMPANY ("SAINT-GOBAIN"). Carborundum has been a worldwide leader in the development and application of materials such as silicon carbide, boron nitride, aluminum nitride, and other ceramics, with a special emphasis on abrasives and

refractory and insulation compounds. Carborundum products have been put to use in virtually every industry, from steel to automotive to space exploration. It was purchased by SAINT-GOBAIN in 1995.

170.    SAINT-GOBAIN ABRASIVES INC., a subsidiary of the Saint-Gobain Group ("SAINT-GOBAIN"), is a multination corporation that manufactures abrasives for cutting, grinding, and finishing applications and is Successor in Interest to the CARBORUNDUM COMPANY.

171.    Upon information and belief, CARBORUNDUM COMPANY operated a manufacturing facility from 1895 to approximately the mid-1970s in Niagara Falls, New York.

172.    SAINT-GOBAIN continues to operate in New York and markets products in this State under the Carborundum label.

173.    Upon information and belief, defendant SAINT-GOBAIN disposed of industrial and/or chemical waste at the Nash Road Landfill.

174.    Defendant, ROE CONSOLIDATED HOLDINGS individually and as Successor in Interest to FRONTIER CHEMICAL PROCESS, INC ("FRONTIER"), is a foreign holding company with offices at 4390 Paletta Crt Burlington, Burlington, Ontario, Canada, and is Successor in Interest to FRONTIER CHEMICAL PROCESS, INC ("FRONTIER"). FRONTIER produced approximately 25,000 tons of chemical waste a year and had several spills occurred at its facility and was closed in 1992. The EPA performed an emergency removal action in 1993-1994.  It is a Superfund Site.

175.    Upon information and belief, defendant FRONTIER, during all times relevant to this action operated a facility in Pendleton, New York, which provided hazardous and non-hazardous chemical treatment.

176.    Upon information and belief, defendant FRONTIER disposed of industrial and/or chemical waste at the Nash Road Landfill.

177.    Defendant, GRAPHITE SPECIALTIES CORP. Upon information and belief, during all times relevant to this action, defendant GRAPHITE SPECIALTIES CORP. operated a manufacturing facility in Niagara Falls, New York.

178.    Upon information and belief, defendant GRAPHITE SPECIALTIES CORP. disposed of industrial and/or chemical waste at the Nash Road Landfill.

179.    Defendant, CROWN BEVERAGE PACKAGING, LLC individually and as Successor in Interest to CONTINENTAL CAN ("CONTINENTAL"). CROWN BEVERAGE PACKAGING, LLC is a foreign Limited Liability Company authorized to do business in New York State.  CONTINETAL manufactured tin cans, and expanded over the years to other metals, paper and fiber containers, crown caps, and plastics.

180.    Upon information and belief, during all times relevant to this action defendant CONTINENTAL CAN operated a facility in Tonawanda, New York.

181.    Upon information and belief, defendant CONTINENTAL CAN disposed of industrial and/or chemical waste at the Nash Road Landfill.

182.    Defendant, GREIF, INC individually and as Successor in Interest to GREIF BROS. COOPERAGE CORPORATION ("GREIF"). GREIF, INC is a foreign Limited Liability Company authorized to do business in New York State.  The company manufactured industrial packaging systems carrying such products as steel containers, fiber drums, plastic drums, bulk containers, water bottles, container closure systems, corrugated containers, dunnage products, protective packaging, multiwall packaging, and containerboard at its Niagara Falls, Canada plant.

33

183.    Upon information and belief, defendant GREIF disposed of industrial and/or chemical waste at the Nash Road Landfill.

184.    REPUBLIC SERVICES, INC. individually and as Successor in Interest to NIAGARA SANITATION COMPANY, INC.

185.    Upon information and belief, defendant NIAGARA SANITATION COMPANY, INC. accepted chemical, industrial, and hazardous waste for disposal at the Nash Road Landfill.

186.    Defendant NIAGARA SANITATION COMPANY, INC. did not adequately control the Landfill or properly segregate the chemical waste from regular municipal waste.

187.    Upon information and belief, defendant NIAGARA SANITATION COMPANY, INC. disposed of industrial and/or chemical waste at the Nash Road Landfill.

188.    HONEYWELL INTERNATIONAL INC. individually and as Successor in Interest to BELL AEROSPACE.

189.    Upon information and belief, defendant BELL AEROSPACE disposed of industrial and/or chemical waste at the Nash Road Landfill.

190.    PYROTEK INCORPORATED individually and as Successor in Interest to the CARBORUNDUM COMPANY.

191.    Upon information and belief, defendant PYROTEK INCORPORATED purchased business units of the CARBORUNDUM COMPANY that disposed of industrial and/or chemical waste at the Nash Road Landfill.

192.    When reference is made in this First Amended Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the

management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

193.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

194.    Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs and the Class, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

## CLASS ACTION ALLEGATIONS

195.    Plaintiffs and the Class incorporate the foregoing paragraphs as though the same were set forth at length herein.

196.    Plaintiffs bring this action and seek to certify a class action pursuant to Article 9 of the New York Civil Practice Law and Rules, Section 901[2], on behalf of themselves and those similarly situated individuals as members of the proposed subclasses, subject to amendment and additional discovery as follows:

a.    all residents of North Tonawanda and Wheatfield who have been exposed to the toxic contaminants and industrial solvents, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum

---

[2] Article 9 of the CPLR greatly liberalizes the narrow class action legislation which preceded it (*See City of New York v. Maul*, 14 N.Y.3d 499, 509, *quoting Friar v. Vanguard Holding Corp.*, 78 A.D.2d 83) and enables the use of the class action device in cases involving "mass exposure to environmental offenses." *See Evans v City of Johnstown,* 97 A.D.2d 1 (3d Dept 1983).

products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs, discharged by Defendants at the Site for personal injury and to establish medical monitoring as 'reasonably anticipated' consequential damages resulting from their exposure to the aforementioned toxins (the "Bodily Injury Subclass");

b.    all owners of real property in North Tonawanda and Wheatfield, New York for damages, whose property value has been diminished due to the known or perceived contamination in the area, and/or stigmatization of property (the "Property Value Damage Subclass");

c.    all owners of real property in North Tonawanda and Wheatfield, New York, for all past, present, and future costs of remediation for the contamination of their real property, described of herein (the "Remediation Subclass");

d.    all owners of real property in North Tonawanda and Wheatfield, New York, for all future costs associated with the environmental monitoring of the contamination caused by Defendants described of herein, including but not limited to soil vapor testing, sub-slab testing, and indoor air testing (the "Property Monitoring Subclass").

197.    Excluded from the Subclass are:

a.    Defendants, including any entity or division in which Defendants have a controlling interest, along with their legal representative, employees, officers, directors, assigns, heirs, successors, and wholly or partly owned subsidiaries or affiliates;

b.    the Judge to whom this case is assigned, the Judge's staff, and the Judge's immediate family; and

c.    all governmental entities.

198.    The Subclasses and this action satisfy the Numerosity, commonality, typicality, adequacy, predominance, and superiority requirements.  Plaintiffs reserve the right to amend the Subclass definitions if discovery and further investigation reveal that any Subclass should be expanded, divided into additional subclasses, or modified in any other way.

## NUMEROSITY AND ASCERTAINABILITY

199.    The Subclasses are so numerous that joinder of all members is impracticable, given that the amount of affected residents and property owner residents in North Tonawanda and Wheatfield, upon information and belief, has reached several hundred. While the exact number of Subclass members is not yet known, a precise number can be ascertained from U.S. Federal Census records, State of New York and North Tonawanda and Wheatfield public records, and through other discovery.  Finally, Subclass members can be notified of the pendency of this action by Court-approved notice methods.

## PREDOMINANCE OF COMMON ISSUES

200.    There are numerous questions of law and fact common to Plaintiffs and Subclass Members that predominate over any question affecting only individual Subclass Members, the answers to which will advance resolution of the litigation as to all Subclass Members. These common legal and factual issues include the following:

a)      whether Defendants engaged in the conduct alleged herein;

b)      whether Defendants knew or should have known that exposure to the Contaminants disposed of at the Site could increase health risks;

c)      the extent to which Defendants knew about the contamination described of herein in North Tonawanda and Wheatfield, New York;

d)      whether the manner in which Defendants disposed of the Contaminants proximately caused the injuries described of herein;

e)      whether Defendants made unlawful and misleading representations or material omissions with respect to the health impacts of the Contaminants;

f)      for the Bodily Injury Subclass, whether any health issue or bodily injury of Plaintiffs and the Subclass are attributable to Defendants' actions and omissions;

g)      for the Property Value Subclass, whether property values in North Tonawanda and Wheatfield declined following the disclosure of the contamination described of herein; and

h)      whether Plaintiffs and Subclass Members are entitled to damages and other monetary relief, medical monitoring and punitive damages, and if so, in what amount.

## **TYPICALITY**

201.    Plaintiffs' claims are typical of the claims of Subclass Members, and arise from the same course of conduct by Defendants. Plaintiffs' persons and real property, like all Subclass Members, have been damaged by Defendants' misconduct in that they have incurred damages and losses related to the contamination migrating from the Site, causing personal injury and property damages.  Furthermore, the factual bases of Defendants' actions and misconduct are common to all Subclass Members and represent a common thread of misconduct resulting in common injury to all Subclass Members.  The relief Plaintiffs seek is typical of the relief sought for absent Subclass Members.

## ADEQUACY OF REPRESENTATION

202.    Plaintiffs will serve as fair and adequate Subclass representatives as their interests, as well as the interests of their counsel, do not conflict with the interest of other members of the Subclass they seek to represent.   Further, Plaintiffs have retained counsel competent and experienced in class action litigation.

203.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Subclasses.

## SUPERIORITY

204.    The class action mechanism is superior to any other available means of the fair and efficient adjudication of this case.   Further, no unusual difficulties are likely to be encountered in the management of this class action. Given the great amount of North Tonawanda and Wheatfield residents impacted by Defendants' conduct, it is impracticable for Plaintiffs and the Subclasses to individually litigate their respective claims for Defendants' complained of conduct. To do so would risk inconsistent or contradictory judgments and increase delays and expense to both parties and the court system. Therefore, the class action mechanism presents considerably less management challenges and provides the efficiency of a single adjudication and comprehensive oversight by a single court.

## COUNT I – RECOVERY OF COSTS UNDER CERCLA § 107(a)

205.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 204 of this complaint as though fully restated herein.

206.    The Nash Road Landfill Site is a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9), and there has been a release of hazardous substances at that

facility which has necessitated the incurrence of responses costs consistent with the National Contingency Plan, 40 C.F.R. Part 300.

207.    As the owner and operator of the Site at the time of disposal of hazardous substances, Defendant Town of Wheatfield is strictly liable under Section 107(a)(2) of CERCLA for all response costs incurred and to be incurred by Plaintiffs in connection with the Site.

208.    As persons who arranged for disposal of hazardous substances at the Nash Road Landfill, Defendants are strictly liable under Section 107(a)(2) of CERCLA for all response costs incurred and to be incurred by Plaintiffs in connection with the Site.

## COUNT II – RIGHT TO CONTRIBUTION UNDER CERCLA § 113(1)

209.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 208 of this complaint as though fully restated herein.

210.    Defendants are all persons liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), as set forth more fully above.

211.    As persons liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), Defendants are also liable to Plaintiffs for contribution with respect to Plaintiffs' response costs pursuant to CERCLA § 113(f), 42 U.S.C. § 9613(f).

## COUNT III – DECLARATORY RELIEF AS TO FUTURE
## COSTS UNDER CERCLA § 113(g)(2)

212.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 211 of this complaint as though fully restated herein.

213.    There is a present and actual controversy between Plaintiffs and Defendants concerning their respective rights and obligations with respect to CERCLA response costs associated with the Nash Road Landfill Site.

214.    CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), provides that courts "shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

215.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2), as to the rights and duties of the parties and, in particular, a determination that Defendants are liable under CERCLA §§ 107(a) and 113(f), 42 U.S.C. §§ 9607(a) and 9613(f), for past, present, and future costs of assessment, containment, response, removal, and remediation arising from the presence of hazardous substances, at the Site.

### COUNT IV: 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS – STATE CREATED DANGER
### (Against Town of Wheatfield)

216.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 215 of this complaint as though fully restated herein.

217.    Plaintiffs, in this action, are citizens of the United States or lawful permanent residents and all of the Defendants are persons for purposes of 42 U.S.C. § 1983.

218.    Defendant Town of Wheatfield was, at all times relevant hereto, acting under the color of law and its acts and/or omissions were conducted within the scope of their official duties and employment.

219.    Policies and procedures of the Town of Wheatfield condoned and effectuated the wrongdoing of individual government officials.

220.    Plaintiffs herein, at all times relevant hereto, have a clearly established Constitutional right under, inter alia, the Fourteenth Amendment, such that a Town or other state-actor cannot deprive a person of their life, liberty or property without due process of law.

221.    Defendant Town of Wheatfield acted to expose the Plaintiffs to toxic contaminants and industrial solvents, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

### COUNT V: 42 U.S.C. § 1983 – SUBSTANTIVE DUE PROCESS – BODILY INTEGRITY
### (Against Town of Wheatfield)

222.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 221 of this complaint as though fully restated herein.

223.    Plaintiffs, in this action, are citizens of the United States or lawful permanent residents and all of the Defendants are persons for purposes of 42 U.S.C. § 1983.

224.    Defendant Town of Wheatfield, at all times relevant hereto, was acting under the color of law, and its acts and/or omissions were conducted within the scope of its official duties.

225.    Plaintiffs have a clearly established right to bodily integrity under the Fourteenth Amendment. At all times relevant hereto, that right is and has been well established.

226.    Defendant Town of Wheatfield was aware that its conduct could result in the deprivation of Individual Plaintiffs' fundamental due process rights to bodily integrity.

227.    Defendant Town of Wheatfield deliberately and knowingly breached the constitutionally protected bodily integrity of Plaintiffs by creating and perpetuating the ongoing exposure to an unmaintained, unmonitored and unsecured hazardous waste site, with deliberate indifference to the known risks of harm which said exposure would, and did, cause to Plaintiffs.

228.    Defendant Town of Wheatfield had the opportunity to reflect and deliberate before they acted and/or failed to act.

229.    In exposing Plaintiffs to toxic contaminants and industrial solvents, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin,    endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs, Defendant Town of Wheatfield has violated Plaintiffs' right to bodily integrity. Defendants failed to protect the Plaintiffs from a foreseeable risk of harm from exposure to the contaminants.

230.    As a result of Defendant Town of Wheatfield's actions and/or omissions, Plaintiffs suffered bodily harm and their rights to bodily integrity were violated.

231.    Defendant Town of Wheatfield's actions and omissions were malicious, reckless, and/or were made with deliberate indifference to Plaintiffs' constitutional rights. Defendant Town of Wheatfield engaged in these acts willfully, maliciously, in bad faith, and/or in reckless disregard for Plaintiffs' constitutional rights.

232.    These actions shock the conscience of the Plaintiffs and of any reasonable person.

233.    As a result of the Defendant Town of Wheatfield's unlawful conduct, Plaintiffs have suffered injuries and seek relief.

234.    Defendant Town of Wheatfield's actions and/or omissions were the proximate cause of the Plaintiffs' injuries.

235.    As a direct and proximate result of all of Defendant Town of Wheatfield's actions and/or failures to act, Plaintiffs have suffered past, present and future personal injuries, including (but not necessarily limited to): various health problems,  shortened life expectancy, miscarriage, physical pain and suffering, mental anguish, medical expenses, medical monitoring expenses, wage loss, brain and developmental injuries, cognitive deficits, lost earning capacity, aggravation and exacerbation of pre-existing conditions, and punitive damages.

## COUNT VI – STATE LAW NEGLIGENCE

236.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 235 of this complaint as though fully restated herein.

237.    Negligence may exist both as an omission as well as an affirmative act.[3]  A cause sounding in negligence allows for the recovery for an injury that was proximately caused by another's violation of a duty of reasonable care.[4]

238.     Defendant the Town of Wheatfield, as owner and operator of the Site that accepted disposal of toxic contaminants and solvents, owed Plaintiffs and the Subclasses a cognizable duty to exercise reasonable care in the disposal of toxic chemicals including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

239.    Defendants breached their duty of reasonable care which a reasonably prudent person should use under the circumstances by negligently storing, disposing of, or otherwise causing the release into the ground toxic chemicals, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs, and negligently permitting their release into the soil and surface and groundwater in and around the Site and in the vicinity of Plaintiffs' and the Subclass' real property.

---

[3] See, e.g., *Zellar v. Tompkins Community Hospital*, 508 N.Y.S.2d 84 (3d Dep't 1986) (failure of hospital to adopt adequate staffing program stated a cause of action for negligence); *Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 379 N.Y.S.2d 873 (4th Dep't 1976) (event organizer's failure to provide adequate security and crowd control stated a cause of action for negligence).
[4] Am Jur. 2d, Negligence § 1

240.    The release of the Contaminants into the soil and surface and groundwater water is the proximate and legal cause of the injuries suffered by the Plaintiffs and the Subclasses to their health and well being and to their properties and the adjacent properties.

241.    To the extent that Defendants' actions resulted in the discharge and/or release of toxic contaminants into the soil and groundwater, thereby entering and injuring Plaintiff's and the Subclass Members' physical and mental well-being, their real and personal property, and their economic interests, Defendants are jointly and severally liable for all damages from contamination in this case, their physical and mental well-being, their real and personal property, and their economic interests.

242.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs and the Subclasses a duty to timely notify them that the aforementioned release from the Site had occurred.

243.    Defendants breached that duty by failing to timely notify the Plaintiffs and the Subclasses of the release of the contaminants at the Site, and, consequently, in the vicinity of their homes and rental properties.

244.    As a result of Defendants' breaches of their duty to timely notify the Plaintiffs and the Subclasses, the Plaintiffs and the Subclasses were forestalled from undertaking effective and immediate remedial measures and Plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

245.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs and the Subclasses a duty to warn the Plaintiffs and the Subclasses of the release of the contaminants and the dangers to the Plaintiffs, their property, and neighboring properties that resulted therefrom.

246.    Defendants breached this duty by failing to adequately warn the Plaintiffs and the Subclasses of the release of the contaminants and the potential dangers and harms that could result.

247.    As a result of Defendants' breaches of their duty to warn the Plaintiffs of the release of the contaminants and the potential dangers and harms that could result, the Defendants' actions and omissions are the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties and the adjacent properties.

248.    Defendants further had a duty to the Plaintiffs upon learning of the release of the contaminants to act reasonably to remediate, contain, and eliminate the spill before it injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs' and the Subclass' property.

249.    Defendants breached that duty by failing to act reasonably to remediate, contain, the eliminate contaminants before they injured Plaintiffs and the Subclasses and their property and/or to act reasonably to minimize the damage to Plaintiffs' and the Subclass' property.

250.    As a result of Defendants' breaches of their duty to Plaintiffs and the Subclasses by failing to act reasonably to remediate, contain, and eliminate the contaminants, the Defendants' actions and omissions are the proximate and legal cause of the injuries suffered by the Plaintiffs and the Subclasses to their health and well being and to their properties and the adjacent properties.

251.    Defendants had a duty to the Plaintiffs and Subclasses to ensure that the Contaminants at the Wheatfield site were sufficiently secure as to prevent the release of the contaminants into the environment surrounding their facilities and into the Plaintiffs' homes and rental properties and neighboring properties.

252.    Defendants negligently breached their duties to the Plaintiffs and Subclasses to ensure that their refining and storage facilities were safe and sufficiently secure as to prevent the release of the contaminants into the environment surrounding their facilities and, consequently, as a result of this breach, contaminants entered into the surrounding Plaintiffs' homes and rental properties.

253.    As a result of Defendants' breaches of their duty to Plaintiffs and the Subclasses by failing to ensure that the Site was safe and sufficiently secure as to prevent the release of the contaminants into the environment surrounding the Site, they are the proximate and legal cause of the injuries suffered by the Plaintiffs and Subclasses to their health and well being and to their properties and the adjacent properties.

254.    Defendants had a legal duty to properly remediate the contamination from their activities at the Site and had full knowledge of the extent of the contamination and the threat it poses to human health and safety.

255.    Defendants willfully and wantonly breached their legal duty to properly remediate the contamination despite full knowledge of the extent of the contamination and the threat it poses to human health and safety.

256.    As a result of Defendants' breaches of their legal duty to properly remediate the contamination despite full knowledge of the extent of the contamination and the threat it poses to human health and safety, they are the proximate and legal cause of the injuries suffered by the Plaintiffs to their health and well being and to their properties and the adjacent properties.

257.    Each and every one of these Plaintiffs and Subclasses suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs and the Subclasses, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger

to Plaintiffs so apparent as to entitle Plaintiffs and the Subclasses to be protected against such actions or inactions.

258.    Accordingly, Plaintiffs and the Subclasses seek damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Subclasses to their original position, including, but not limited to, injuries to persons, consequential damages for medical monitoring, the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants conduct in an amount to be proved at trial. Upon information and belief such amount exceeds the jurisdictional amount of the lower courts.

## COUNT VII – STATE LAW STRICT LIABILITY

259.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 258 of this complaint as though fully restated herein.

260.    Activities such as the disposal of hazardous chemical wastes as is the case herein constitutes an abnormally dangerous activity for which strict liability will apply.

261.    Defendants' aforesaid failure to employ reasonable care which a reasonably prudent person should use under the circumstances by storing, disposing of, or otherwise releasing into the ground dangerous contaminations, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank

sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs, constitutes ultra-hazardous and abnormally dangerous activities involving ultra-hazardous, abnormally dangerous substances.

262.    Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to leak into the surrounding land and surface water, and in doing so, failed to warn Plaintiffs and the Subclasses of the dangerous condition that was caused thereby.

263.    The risks posed by such activities outweigh any value associated with the same. As the result of said ultra-hazardous and abnormally dangerous activities, Plaintiffs and the Subclasses have suffered damages and imminent, substantial and impending harm to their health, families, and home values. Plaintiffs and the Subclasses have expended or will be forced to expend significant resources to safeguard their health and property, obtaining monitoring, testing, remediation services or equipment, as well as health monitoring, indefinitely for years and decades into the future.

264.    By reason of the foregoing, Defendants are strictly liable in tort for the damages sustained by Plaintiffs and the Subclasses.

265.    Accordingly, Plaintiffs and the Subclasses seek damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Subclasses to their original position, including, but not limited to injuries to persons, consequential damages for medical monitoring, the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants conduct in an amount to be proved at trial.  Upon information and belief such amount exceeds the jurisdictional amount of the lower courts.

## COUNT VIII – STATE LAW NUISANCE

266.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 265 of this complaint as though fully restated herein.

267.    Under a cause of action for private nuisance, Parties may be subject to liability for environmental contamination if their conduct invades another's private use and enjoyment of land and if such invasion is: 1) intentional and unreasonable; 2) negligent or reckless; or 3) actionable under the rules governing liability for abnormally dangerous conditions or activities.[5]

268.    Defendant Town of Wheatfield and its predecessor owned and continue own, occupied and continue to occupy, and controlled and continue to control the real property at the Site.

269.    At all times mentioned herein, Defendants had knowledge and/or notice of the hazardous nature of the waste they dumped at the Nash Road Landfill.

270.    At all times mentioned herein, Defendants knew or should have known that the Nash Road Landfill was not a hazardous waste dump, and therefore not designed to contain hazardous waste.

271.    At all times mentioned herein, Defendants knew or should have known the dangerous condition that the contaminants presented and failed to take reasonable acts to cleanup, correct, or remediate that condition.

272.    Additionally, Defendants owed a duty to Plaintiffs and the Subclasses to take reasonable action to eliminate, correct, or remedy any dangerous condition existing on the Site that was reasonably foreseeable to injure Plaintiffs and the Subclasses and/or Plaintiffs' and the Subclass' real property, and of which they had knowledge and/or notice.

---

[5] *Copart Industries, Inc. v. Consolidated Edison Co. of New York, Inc.*, 41 N.Y.2d 564 (1977); *Snyder v. Jessie*, 546 N.Y.S.2d 777 (Sup 1989), *order aff'd as modified*, 565 N.Y.S.2d 924 (4th Dep't 1990); Restatement, Second Torts § 822.

273.    Further, Defendants owed a duty to exercise reasonable care to prevent a condition thereon from endangering the neighboring premises and occupants. Defendants have breached these duties, and each of them, by negligently, willfully, and/or wantonly creating a dangerous condition on the Site by allowing massive quantities toxic contaminants to be disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer on the Site. This dangerous condition is reasonably foreseeable to cause injury and damage to Plaintiffs and the Subclasses and their property due to the size and nature of the releases of the Contaminants and the proximity of Plaintiffs and the Subclasses and their properties.

274.    Defendants owed a duty to Plaintiffs and the Subclasses to exercise reasonable care to keep the dangerous Contaminants from being discharged or allowed to escape, enter surrounding properties, and cause injury and damage.

275.    Defendants breached their duty to Plaintiffs and the Subclasses by failing to exercise reasonable care in the use of the Site to prevent endangering the neighboring premises and occupants.  Specifically, Defendants negligently, willfully, and/or wantonly allowed massive quantities of Contaminants to be disposed of, or otherwise released into the ground, soil, groundwater and/or aquifer at the Site.

276.    Defendants further breached their duty to Plaintiffs and the Subclasses by failing to exercise reasonable care in the use of the Site as prevent large and unknown quantities of the Contaminants to degrade, mix with other chemicals, and escape from their property and enter onto and under Plaintiffs' and the Subclass' property.  The above-described breaches endangered, injured, and damaged the neighboring premises and occupants.  Such a dangerous condition is reasonably foreseeable to cause injury and damage to Plaintiffs and the Subclasses and their property.

277.    Defendants' breach caused dangerous Contaminants to be released onto Plaintiffs and the Subclass' land and caused noxious gases, fumes and odors to emanate from their soil and homes.

278.    Additionally, this breach has caused Plaintiffs and the Subclasses injury to their persons and property that is certain, substantial, and this resulting condition interferes with Plaintiffs and the Subclass' physical comfort.

279.    Plaintiffs and the Subclasses seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained, and to restore Plaintiffs and the Subclasses to their original position, including, but not limited injuries to persons,  consequential damages for medical monitoring, the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and the direct and consequential damages flowing from the trespass and resulting condition which are the natural and proximate result of Defendants conduct in an amount to be proved at trial. Upon information and belief, such amount exceeds the jurisdictional amount of all lower courts.

## COUNT IX – STATE LAW TRESPASS

280.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 279 of this complaint as though fully restated herein.

281.    Environmental contamination of a property constitutes a trespass as it interferes with the conditions of the property.[6] This act of trespass is, in and of itself, objectionable.[7]

---

[6] See *State v. Fermenta ASC Corp.*, 630 N.Y.S.2d 884 (Sup 1995), aff'd in part, 656 N.Y.S.2d 342 (2d Dep't 1997).

282.    Upon information and belief, Defendants had knowledge of the hazardous nature of their waste and the ability to excavate and remove it from the Site to a proper hazardous waste facility at all relevant times.

283.    Upon information and belief Defendants' negligent, willful, and/or wanton actions and/or intentional failures to act caused an uncontrolled quantity of Contaminants to be spilled, disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site.

284.    Upon information and belief, the contaminants disposed of, or otherwise released into the ground, soil, groundwater, and aquifer at the Site entered and trespassed upon the land and realty of the Plaintiffs and the Subclasses, thus interfering with the condition of Plaintiffs and the Subclass' properties and the neighboring properties, causing an injury to their possession and/or right of possession.

285.    Upon information and belief, Defendants took affirmative, voluntary, and intentional actions to dispose of the contaminants into the ground at an unlined municipal landfill.

286.    Upon information and belief, at the time that the above described affirmative, voluntary, and intentional acts were performed, Defendants had good reason to know or expect that the large quantities of Contaminants would pass through the soil, groundwater, and aquifer from the Site to the land of Plaintiffs and the Subclasses and the neighboring properties.

287.    Upon information and belief, the above-described affirmative, voluntary, and intentional acts were performed with the willful intent to cause the Contaminants to be disbursed

---

[7] See *PBN Associates v. Xerox Corp.*, 517 N.Y.S.2d 1015 (Sup 1987), *judgment modified*, 529 N.Y.S.2d 877 (2d Dep't 1988) *and decision modified on reargument on other grounds*, 575 N.Y.S.2d 451 (2d Dep't 1991).

through the soil, groundwater, and aquifer without regard for the inevitable transport onto the land and property of Plaintiffs and the Subclasses and the neighboring properties.

288.    Defendants' actions in disposing of uncontrolled amounts of the Contaminants into the ground were done with actual malice, and in wanton and willful and/or reckless disregard for Plaintiffs and the Subclass' rights, health and property.

289.    These voluntary and intentional actions resulted in the trespass of the Contaminants, which is continuing and ongoing on to the Plaintiffs and the Subclass' and neighboring and properties, thus interfering with the condition of Plaintiffs and the Subclass' and neighboring property, causing injury and damage to Plaintiffs and the Subclasses, their property and their right of possession of their property.

290.    Based upon the above, Plaintiffs and the Subclasses seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained by Plaintiffs and the Subclasses and to restore Plaintiffs and the Subclasses to their original position, including, but not limited to, injuries to persons, consequential damages for medical monitoring, the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, consequential damages flowing from the trespass which are the natural and proximate result of Defendants conduct, and exemplary or punitive damages.

## DAMAGES SOUGHT BY THE CLASS

291.    Plaintiffs and the Subclasses re-allege and reaffirm each and every allegation set forth in paragraphs 1 through 290 of this complaint as though fully restated herein.

292.    Plaintiffs and the Subclasses have been and continue to be exposed to elevated and hazardous levels of toxic and hazardous substances, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin,  endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

293.    Plaintiffs and the Subclasses were and continue to be exposed to the elevated and hazardous level of toxic and hazardous substances through dermal contact with contaminated soil, ingestion and dermal contact with fruits and vegetables and other items grown or developed in the contaminated soil, the ingestion and/or inhalation of toxic matter, and the continued physical contact with contaminated soil, vapors, and debris.

294.    Plaintiffs and the Subclasses have sustained and will continue to sustain damages to their property as a result of Defendants' actions. As a result, Plaintiffs and the Subclasses seek monetary damages for each violation of the First through Fourth Claims for Relief.  In particular, Plaintiffs and the Subclasses seek (i) monetary damages for personal injuries; (ii) monetary damages reflecting the cost to remediate Subclass Members' property of the contamination caused by Defendants' conduct or, in the alternative, to compensate Subclass Members for the diminution in value of their property caused by Defendants' conduct; (iii) and monetary damages to compensate Subclass Members for the loss of the use and enjoyment of their properties caused by Defendant's conduct.

295.    Plaintiffs and the Subclasses also seek consequential damages sufficient to fund a medical monitoring program[8] that is reasonably tailored to the exposure risks of the contaminants emanating from Defendants' property, including but not limited to Aldrin, arsenic,

---

[8] Medical Monitoring is not being sought as in independent cause of action but, rather, as consequential damages in connection with the personal injury and property claims sought herein as is appropriate. *See Ivory v. Int'l Bus. Machines Corp.,* 983 N.Y.S.2d 110 (2014), *leave to appeal denied*, 11 N.E.3d 204 (2014).

barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

296.    As cancer risk from multiple agents is additive, the cumulative cancer risk posed by multiple contaminants is consequently greater that the risk posed by any single contaminant.

297.    Defendants continued negligent acts and omissions in operating and maintain the Site are the proximate cause of higher than normal, in fact excessive exposure, to hazardous substances and contaminants, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs.

298.    The resulting exposure has significantly increased the risk of Plaintiffs and the Subclasses of contracting serious latent diseases, including but not limited to lung, skin, breast, bladder, liver, kidney, prostate cancer, and other cancers, permanent intellectual and behavioral effects on child development, effects on the central nervous system, respiratory, and other diseases and conditions.

299.    Each and every one of these Plaintiffs and Subclass Members will incur future expenses for medical monitoring and, as a result, seek payment of their related medical expenses as an element of the consequential damages.

300.    In order to compensate Plaintiffs and the Subclasses for damages suffered due to Defendants' acts, each and every Plaintiff and Subclass Members requires, among other things, that Defendants collectively pay the future costs of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary in order to ascertain and treat the nature and extent of the injuries suffered due to the contamination that

emanated and continues to emanate from the Site.  Many of these costs would not be covered by health care insurers, and if covered, may unfairly result in increased premiums.

301.    Each and every one of these Plaintiffs' and Subclass Members' are at a significantly elevated risk resulting from their exposure to hazardous substances and chemicals in and around their homes in the North Tonawanda and Wheatfield area can only be mitigated and/or addressed by the creation of a medical monitoring program (the "Program") including but not limited to:

a.    Establishing a program that provides education and outreach on the existence and availability of the services established under the medical monitoring program, including but not limited to the establishment of a public Website with information about the   Program, meetings with potentially eligible populations, development and dissemination of outreach materials informing North Tonawanda and Wheatfield residents about the program, and the establishment of phone information services;

b.    Funding medical monitoring for those individuals exposed to the contaminants described of herein, including but not limited to Aldrin, arsenic, barium, benzo-trichlorides, cadmium, caustics, chlorobenzenes, chlordane, chromium, dieldrin, endrin, hexachlorocyclohexane, lindane, lead, mercury, petroleum products, phenol, plating tank sludge, polycyclic aromatic hydrocarbons (PAHs), and PCBs;

c.    Funding research into possible cures for the detrimental effects of breathing, living and working near the contaminants and toxicants present in the North Tonawanda and Wheatfield area as a result of the acts and omissions alleged here;

d.    Gathering and forwarding to each and every one of these Plaintiffs' and Subclass Members' treating physicians' information related to the diagnosis and

treatment of injuries which result from their exposure(s) in and around North Tonawanda and Wheatfield;

      e.     Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of each and every one of these Plaintiffs and the Subclasses.

      f.     Funding further studies of the long-term effects of the exposure.

302.    Prescribed monitoring procedures exist that makes the early detection of these diseases possible.

303.    The monitoring procedures or regimes are different from normally recommended procedures that would be used in the absence of the exposure.

304.    The prescribed medical monitoring is reasonably necessary according to contemporary scientific principals for persons such as Plaintiffs and the Subclasses who have been exposed and continue to be exposed to excessive levels of the referenced hazardous chemicals and materials.

305.    Plaintiffs and the Subclasses will suffer irreparable harm if the requested medical monitoring program is not implemented because they are in danger of suffering catastrophic latent diseases as a result of their prolonged exposure to toxic and hazardous substance caused by Defendants' negligence.

306.    Detection of these diseases and early treatment is medically reasonable and necessary to prevent progression and further injuries.

307.    It is also medically reasonable and necessary to collect data and coordinate study efforts for persons exposed to such substances in order to effectively treat Plaintiffs and the Subclasses.

308.    Establishment of a medical monitoring program for the Plaintiffs and the Subclasses is essential as a consequential damage from their exposure to the contaminants because without the requested medical monitoring programs, they will be subjected to further injuries and delayed treatment.

309.    Plaintiffs and the Subclasses request that the Court appoint a plan administrator, require the Defendants to fund the medical monitoring plan, and reserve jurisdiction to enforce the terms and conditions of the plan.

310.    Accordingly, Plaintiffs and the Subclasses are entitled to a medical monitoring program which provides for medical testing, surveillance, monitoring, and study of the Plaintiffs and the Subclasses for conditions caused by exposure to the references substances, as well as payment of their attorney's fees and expenses, and any other relief this court deems just and proper

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Subclasses, on behalf of themselves and all others similarly situated request the Court to enter judgment against Defendants as follows:

A. As and for the First Cause of Action sounding in negligence, Plaintiffs and the Subclasses seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their personal  injuries and property damages in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Subclasses to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants' conduct in an amount in excess of the

jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys' fees.

B.  As and for the Second Cause of Action sounding in strict liability, Plaintiffs and the Subclasses seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs and the Subclasses to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and consequential damages flowing from the trespass which are the natural and proximate result of Defendants' conduct in an amount in excess of the jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys' fees.

C.  As and for the Third Cause of Action sounding in nuisance, Plaintiffs and the Subclasses seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained by Plaintiffs and the Subclasses and to restore Plaintiffs and the Subclasses to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and direct and consequential damages flowing from the nuisance and trespass which are the natural and proximate result of Defendants conduct in an amount in excess of the jurisdictional minimum, as well as punitive damages, exclusive of interest, costs, and attorneys fees.

D.  As and for the Fourth Cause of Action sounding in trespass, Plaintiffs and the Subclasses seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses sustained, and to restore Plaintiffs and the Subclasses to their original position, including, but not limited to the difference between the current value of the land and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, and the direct and consequential damages flowing from the trespass and resulting condition which are the natural and proximate result of Defendants conduct in an amount in excess of the jurisdictional minimum as well as punitive damages, exclusive of interest, costs, and attorneys fees.

E.  As and for the combined claims on each of the foregoing causes of action, all of which flow directly as a result of the wanton, willful and reckless conduct of the Defendants and each of the Defendants herein, Plaintiffs and the Subclasses seek exemplary or punitive damages in addition to the compensatory damages set forth, *supra*, in an amount to be determined at trial.

F.  An Order mandating that the Defendants, and each of them, and their successors and assigns, take every action necessary to assure that all relief requested herein is obtained and fully funded;

G.  Award Plaintiffs and the Subclasses the costs of this lawsuit, including but not limited to attorneys' fees and expert costs.

H.  Awarding Plaintiffs such other, further, and different relief as the Court may deem appropriate and just.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all claims asserted in this Verified Complaint.


Dated: New York, New York                    Respectfully submitted,
      October 27, 2017

                                            **NAPOLI SHKOLNIK PLLC**

                                            By: _Thomas W. Raleigh_
                                            Thomas W. Raleigh
                                            Paul J. Napoli
                                            Louise Caro
                                            360 Lexington Ave., 11th Floor
                                            New York, NY, 10017
                                            Tel: (212) 397-1000
                                            Fax: (646) 843-7603
                                            traleigh@napolilaw.com
                                            pnapoli@napolilaw.com
                                            lcaro@napolilaw.com


**CHRISTEN CIVILETTO**                         **SMITH STAG L.L.C.**
Christen Civiletto, Esq.                     Michael Stag, Esq.
(*Pro Hac Vice pending*)                     Ashley Liuzza, Esq.
8313 West Point Drive                      One Canal Place
East Amherst, N.Y. 14051                365 Canal Street, Suite 2850
(716) 713-2431                           New Orleans, Louisiana 70130
Christenciviletto@gmail.com            Tel:(504) 593-9600
                                            Fax: (504) 593-9601
                                            mstag@smithstag.com
                                            aliuzza@smithstag.com


*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

ELIZABETH ANDRES, et al.,

                            Civil Action No.:
               *Plaintiffs,*                1:17-cv-00377-CCR

*-against -*

TOWN OF WHEATFIELD, et al.,                CERTIFICATE OF SERVICE

               *Defendants.*

--------------------------------------------------------------------X


       I hereby certify that on the 27th day of October, 2017, I electronically filed the within Plaintiffs' First Amended Complaint with the Clerk of Court using the CM/ECF system.

       Participants in the case who are registered CM/ECF users were served by the CM/ECF system.  New defendants that have not appeared in this cause will be served as pursuant to F.R.C.P. Rule 4.

       I further certify that I will e-mail the document to the following non-filing users:

MARELLI & CO.
James Marrelli
*Attorneys for Defendant Roe Consolidated Holdings Inc.*
Toronto, Ontario
M1R 4Z5
Canada

                                  _Thomas W. Raleigh_
                              Thomas W. Raleigh, Esq.
                              NAPOLI SHKOLNIK PLLC
                              360 Lexington Ave., 11th Floor
                              New York, NY, 10017
                              Tel: (212) 397-1000
                              Fax: (646) 843-7603
                              traleigh@napolilaw.com
                              *Attorneys for Plaintiffs and the Proposed Class*