UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ELIZABETH ANDRES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00377-CCR |
| | ) | |
| TOWN OF WHEATFIELD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ------------------------------------------------------- | ) | |
| ALICIA BELLAFAIRE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00560-CCR |
| | ) | |
| TOWN OF WHEATFIELD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ------------------------------------------------------- | ) | |
| THEODORE WIRTH, III, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-01486-CCR |
| | ) | |
| TOWN OF WHEATFIELD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER DENYING
PLAINTIFFS' MOTION FOR EXPERTS' USE OF DOCUMENTS
REASONABLY RELIED UPON BY EXPERTS IN THEIR FIELDS PURSUANT
TO FED. R. EVID. 703, GRANTING THE TOWN'S CROSS-MOTION TO
PRECLUDE, AND DENYING THE TOWN'S CROSS-MOTION TO DISMISS**
(Docs. 598, 602)

Plaintiffs are current or previous owners or renters of residential properties in North Tonawanda, New York, and the surrounding area who have lived in that area for at least one year (collectively, "Plaintiffs). They bring this action against the Town of Wheatfield (the "Town")[1] arising out of Plaintiffs' alleged exposure to toxic substances emanating from the Town's Nash Road landfill (the "Site").

On October 11, 2024, Plaintiffs filed a motion for experts' use of documents reasonably relied upon by experts in their fields pursuant to Federal Rule of Evidence 703 (the "Rule 703 Motion"). (Doc. 598.) Plaintiffs filed amendments and corrections to their motion on October 18, 2024. (Doc. 601.) On October 24, 2024, the Town filed its response and a cross-motion to dismiss and preclude. (Doc. 602.) Plaintiffs filed a reply on October 31, 2024, (Doc. 604), and their opposition to the Town's cross-motion on November 12, 2024. (Doc. 606.) The Town replied on November 22, 2024, (Doc. 607), at which point the court took both motions under advisement.

Plaintiffs are represented by Michael G. Stag, Esq.; Ashley M. Liuzza, Esq.; John R. Fonda, Esq.; Lilia Factor, Esq.; Christen Civiletto, Esq.; Paul J. Napoli, Esq.; Louise R. Caro, Esq., and Tate James Kunkle, Esq. The Town is represented by Charles D. Grieco, Esq.; Aarti Chandan, Esq.; Alison Roach, Esq.; Bradley A. Hoppe, Esq.; Dennis K. Schaeffer, Esq.; Julia Anne O'Sullivan Poarch, Esq.; Kathleen H. McGraw, Esq.; Kevin George Cope, Esq.; Matthew E. Brooks, Esq.; and Scott M. Philbin, Esq.

I.    **Factual and Procedural Background.**

A.    **The *Lone Pine* Process and the Court's Prior Discovery Orders.**

These consolidated actions were filed in 2017. On June 28, 2022, the court heard oral arguments on Defendants' joint motion for a *Lone Pine* Order, (Doc. 275), during which the court stated to Plaintiffs: "we are very far down the path and . . . you know

---

[1] In their original Complaint, Plaintiffs asserted claims against additional defendants: Occidental Chemical Corp.; Hooker Chemical and Plastics Corp.; Bell Helicopter Textron, Inc.; SaintGobain Abrasives Inc.; Roe Consolidated Holdings; Graphite Specialties; Crown Beverage Packaging, LLC; and Greif, Inc. These defendants have since been dismissed and only the Town remains; however, to reflect prior filings, these entities are included in the reference to "Defendants."

what your clients' injuries are and you know who's treating and I hope you have their medical records." (Doc. 602-10 at 4.) However, when asked whether they had obtained medical records, counsel for Plaintiffs stated: "We have some. We've been in the process probably in the last five months getting the bulk of medical records." *Id.* at 7. That same day, the court heard arguments on Defendants' motion to compel compliant initial disclosures. (Doc. 299.) The court found that Plaintiffs had not fully complied with Federal Rule of Civil Procedure 26.

On July 8, 2022, Defendants served Joint First Requests for Production ("RFP") of Documents on Plaintiffs. (Doc. 342-4.) Therein, they requested the production of "[a]ll medical, dental, pharmacy, psychiatric, and other health care-related records concerning [Plaintiffs'] claimed personal injuries that are the subject of these lawsuits." *Id.* at 8, ¶ 3.

On September 9, 2022, due to Plaintiffs' failure to fully respond to Defendants' RFP, Defendants filed a joint motion to compel Plaintiffs to comply with Fed. R. Civ. P. 26(a) and the court's prior orders. (Doc. 337.) At a January 6, 2023 hearing (the "January 6 hearing"), the court observed:

> The [c]ourt was crystal clear in its order in granting the motion to compel as to what was required. The [P]laintiffs have failed to satisfy the [c]ourt's order. Even when the motion for contempt is pending, they didn't rectify that error.
>
> I am not going to find the [P]laintiffs in contempt because I am not going to find that you had a contemptuous approach. . . . But it is a significant problem in this case and I am going to find you failed to comply with my order. You're still noncompliant. And your explanation for why you are noncompliant is completely unsatisfactory for the [c]ourt, especially this far down the road.
>
> * * *
>
> [I]t's crazy that we are stumbling on initial disclosures. But I agree with the [D]efendants that this is a case in which noncompliance is clear.

(Doc. 402 at 23-24.)

Pursuant to the court's rulings during the January 6 hearing, Defendants filed a motion for a modified discovery order on February 27, 2023 (Doc. 383), notifying the court of information missing from Plaintiffs' Case Management Affidavits ("CMAs").

3

The court issued an Opinion and Order on April 6, 2023, (the "April 6 Order"), allowing Defendants to "move for summary judgment based upon the information in Plaintiffs' CMAs," and ordering any Plaintiff whose "claim or claims survive a CMA Motion . . . [to] serve Individual Damages Disclosure and Individual Document Response within thirty (30) days from the court's decision on the CMA Motions." (Doc. 403 at 2, ¶ b, 3, ¶ h.) Plaintiffs were also ordered to produce compliant initial disclosures pursuant to Rule 26 within thirty days of the court's decision.

Defendants subsequently filed "joint motions for summary judgment as to 158 Plaintiffs, as to the personal injury claims of eighty-six Plaintiffs, and as to three groups of Plaintiffs[.]" (Doc. 512 at 2) (internal citations omitted). On March 15, 2024, the court issued an Opinion and Order granting Defendants' motion for summary judgment in part for certain Plaintiffs (the "March 15 Order"). (Doc. 512.) The court required Plaintiffs to produce records in response to Defendants' RFP by April 14, 2024. The court also concluded:

> Plaintiffs must be provided an opportunity to complete discovery relevant to proximate causation and produce expert witness reports before the court can decide whether Defendants, if any, are entitled to summary judgment. For this reason, the court DENIES WITHOUT PREJUDICE Defendants' request for summary judgment on Plaintiffs' personal injury claims. Within fourteen (14) days of this Opinion and Order, the parties shall meet and confer and establish the deadlines for expert witness reports and any other discovery. Upon the completion of discovery, Defendants may renew their motions.

*Id.* at 15.

Pursuant to its March 15 Order, the court issued a Scheduling Order on April 1, 2024, imposing a June 1, 2024 deadline for written discovery. (Doc. 517.) The court has since issued two additional Scheduling Orders. The first was issued on August 19, 2024, wherein the court noted "[a]ll written discovery is complete except for requests to admit as addressed below." (Doc. 585 at 2.) The second Order, issued on October 16, 2024, stated that "all fact witness discovery shall be completed no later than October 11, 2024, subject to the right of any party to move the [c]ourt, upon a showing of good cause and

4

following receipt of the results of the environmental sampling performed pursuant to the Sampling Order, for leave to depose a fact witness after October 11, 2024" (Doc. 600 at 2.) The deadline to complete discovery was August 8, 2025. *Id.* at 3.

### B.    The May 16 Order.

On May 16, 2024, the court heard oral arguments on Defendants' joint motion to dismiss or to preclude, (Doc. 522), and on Defendants' motion to dismiss property damage claims (the "May 16 hearing"). (Doc. 524.) Defendants' motion to dismiss or preclude was based on Plaintiffs' failure to produce documents responsive to Defendants' RFP by April 14, 2024, in violation of the April 6 Order and their motion to dismiss property damage claims premised on Plaintiffs' failure to comply with this court's May 26, 2023 Stipulation and Order.[2]

At the outset of the May 16 hearing, the court noted:

> I asked [P]laintiffs, straight up, under Rule 11, officers of the court, have you completed your initial disclosures? And I was told, yes, we have. I told [P]laintiffs, I want your discovery in [thirty] days. Straight up, officers of the court, it's going to be done in [thirty] days. So, I was surprised that we still have any kind of issues, and I am further surprised that the [Plaintiffs'] defense should be, we're trying, we're marking progress, we're acting in good faith. At this point, it's really not so much bad faith or good faith, it's just ignoring the [c]ourt's orders or partial compliance.

(Doc. 531 at 4-5.)

When asked about Plaintiffs' alleged noncompliance with the court's prior Orders, counsel for Plaintiffs stated: "We have definitely complied with the letter

---

[2] The court ordered:

> Each Plaintiff identified in the March 24 Notice shall have until July 10, 2023[,] to serve a Fed. R. Civ. P. 26(a)(1)(A)(iii) individual disclosure that includes a damages computation for each and every category of damages that the Plaintiff seeks, and the documents supporting each claim for damages, and each Plaintiff's disclosure shall be a separate[,] standalone document and not combined with the disclosure of any other Plaintiff except his or her spouse. Failure to do so shall be grounds for Defendants to move to dismiss.

(Doc. 419 at 4, ¶ 1) (internal citation and emphasis omitted).

5

and spirit of Rule 26 at this point." *Id.* at 28. After hearing the parties' arguments, the court ruled:

> The [P]laintiffs have represented to the [c]ourt they are fully compliant with Rule 26. . . . [T]hat means no further documents responsive to Rule 26 need be produced, and nor will they be admissible. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or a trial, unless the failure was substantially justified or is harmless.
>
> * * *
>
> There is no indication that the failure was substantially justified or harmless. To the contrary. Plaintiffs have represented they are in full compliance and that there is nothing more that they need to provide to be in full compliance with their initial disclosures.

(the "May 16 Order") *Id.* at 29.

> The court further ordered written discovery closed, explaining:

> The most appropriate response . . . is the [c]ourt would prohibit the disobedient party from supporting designated claims or defenses or from introducing designated matters into evidence that have not previously been disclosed.
>
> ***
>
> [T]he appropriate sanction . . . is that if it hasn't been disclosed to date, it will not be used at trial by the [P]laintiffs through some subsequent disclosure unless it is true supplementation; meaning a document or piece of information that could not have been acquired previously because it did not exist, and was not accessible from the third-party source or from the [P]laintiffs themselves.
>
> The [c]ourt finds that if it hasn't been produced, then [P]laintiff[]s['] willfulness was intentional, that the efficacy of lesser sanctions is not appropriate. We've had this issue for, now, a matter of years. The duration of the period of non-compliance has been substantial, and the non-compliant party has been warned repeatedly of the consequences of non-compliance.

*Id.* at 30, 31-32.

Regarding property damages, during the May 16 hearing, Plaintiffs represented they intend to argue their homes are uninhabitable and claim a total loss of their property. As a result, they provided Defendants only with Zillow estimates of Plaintiffs' homes'

values and, in certain cases, corresponding tax records. At no time did Plaintiffs advise the court that additional records and documents would be forthcoming, such as appraisals. Based on this, the court found that the parties "don't have to have an expert witness. Zero is zero. . . . [I]t's nothing that [the Town] would have to investigate." *Id.* at 33.

### C.    Plaintiffs' Fed. R. Civ. P. 703 Motion.

On October 11, 2024, Plaintiffs filed their Rule 703 Motion, (Doc. 598), seeking clarification regarding whether their expert witnesses will be able to rely on medical records which Plaintiffs produced after the close of written discovery on May 16, 2024.[3] They argue the court should allow this because "experts are fully entitled to base their opinions on reliable records regardless of the admissibility of those records[.]"(Doc. 598-1 at 5.)

On October 24, 2024, the Town opposed Plaintiffs' motion, (Doc. 602), arguing the court's May 16 Order precludes Plaintiffs' experts from relying on documents disclosed after the close of written discovery. The Town also filed a cross-motion, seeking dismissal of "the personal injury claims of [seventy-one] Plaintiff[s] who produced medical records beyond the [c]ourt-imposed May 16, 2024 deadline and preclu[sion of] Plaintiffs from offering expert opinion testimony regarding their claimed property damages[.]" (Doc. 602-11 at 5.) Plaintiffs neither confirm nor deny whether the medical records they produced after the May 16 Order were requested prior to that date.

### II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

"A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d

---

[3] Plaintiffs contemporaneously produced additional medical records for ten Plaintiffs as part of their request for clarification. *See* Doc. 598-1 at 7-10. The Town claims over 17,000 pages of medical records were produced after the deadline and points out that, "based upon [its] initial review of the newly produced records, it appears that at least for some of the records, Plaintiffs did not even make medical records requests until well after May 16, 2024." (Doc. 602-11 at 17) (citing 602-1 at 5-6, ¶¶7-14).

Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014). Compliance with discovery orders "is necessary to the integrity of our judicial process. A party who flouts such orders does so at his [or her] peril." *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).

"Federal Rule of Civil Procedure 37(b)(2) authorizes courts to impose sanctions on parties that fail to comply with discovery orders." *Drip Cap., Inc. v. JY Imps. of N.Y. Inc.*, 2024 WL 5232518, at *10 (E.D.N.Y. Dec. 27, 2024). The rule provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include . . . dismissing the action or proceeding in whole or in part[.]" Fed. R. Civ. P. 37(b)(2)(A). "Dismissal under Rule 37 is appropriate 'only when a court finds willfulness, bad faith, or any fault' by the non-compliant litigant." *Park v. Kim*, 91 F.4th 610, 612 (2d Cir. 2024) (quoting *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990)). "Despite the compulsory language in Rule 37, 'a district court has wide discretion in sanctioning a party for discovery abuses.'" *Houghtaling v. Downes*, 2023 WL 7304954, at *5 (W.D.N.Y. Oct. 11, 2023) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)).

The court's May 16 Order provides as follows:

> "[T]he [c]ourt . . . prohibit[s] the disobedient party from supporting designated claims or defenses or from introducing designated matters into evidence that have not previously been disclosed. So, if you have not disclosed it, it will not come in. You will not be supplementing with information that previously existed.
>
> * * *
>
> "[W]ritten discovery[] is closed. You are going to complete it. We're going to move on to fact witness discovery.
>
> * * *
>
> [T]he appropriate sanction . . . is that if it hasn't been disclosed to date, it will not be used at trial by the [P]laintiffs through some subsequent disclosure unless it is true supplementation; meaning a document or piece of information that could not have been acquired previously because it did not exist, and was not accessible from the third-party source or from the [P]laintiffs themselves.

(Doc. 531 at 30-32.)

### B.    Whether Plaintiffs' Medical Experts May Rely on Medical Records Produced After May 16, 2024.

Plaintiffs ask the court to allow their five medical experts to rely on medical records not disclosed on or before May 16, 2024, because even if those records are inadmissible at trial, neither the May 16 Order nor Federal Rule of Evidence 703 precludes their experts from using inadmissible evidence to form expert witness opinions.

Federal Rule of Evidence 703 states that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

*See also* Fed. R. Evid. 703 Notes of Advisory Comm. ("[T]he rule is designed to broaden the basis for expert opinions . . . and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his [or her] own practice bases his [or her] diagnosis on information from numerous sources and of considerable variety, including . . . reports and opinions from . . . other doctors[.]"). The issue is whether the May 16 Order would be circumvented and rendered meaningless if the court allowed Rule 703 to be used as a conduit for inadmissible evidence which Plaintiffs failed to timely disclose.

"Under New York law, when the determination of whether an illness or injury was caused by some event or conduct is 'presumed not to be within common knowledge and experience,' a plaintiff must produce expert opinion evidence 'based on suitable hypotheses' in order to support a finding of causation." *Andres v. Town of Wheatfield*, 2024 WL 1120413, at *7 (W.D.N.Y. Mar. 14, 2024) (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 160 (E.D.N.Y. 2001), *aff'd* 303 F.3d 256 (2d Cir. 2002)); *see also MacSwan v. Merck & Co.*, 2023 WL 3990673, at *6 (W.D.N.Y. June 14, 2023) (finding expert witness's failure to "review all of [a treatment provider's] records . . . undermines the reliability of his opinions[]"). Expert witness opinions

9

regarding causation of illnesses and injuries are, in turn, almost uniformly based at least in part on the medical records of the plaintiff seeking damages. Here, Plaintiffs repeatedly failed to produce those medical records in a timely manner. As a result, allowing Plaintiffs' experts to base their opinions on previously undisclosed medical records that Plaintiffs were obligated to produce not only in response to the Town's RFP but in response to the court's repeated orders would not only serve to re-open discovery, it would render meaningless the consequences the court decided were appropriate as a lesser sanction in response to the Town's repeated requests for dismissal.

As the court pointed out, Plaintiffs' counsel arguably should have obtained Plaintiffs' medical records before filing suit. Having failed to do so, Rule 26 rendered production of those records necessary as they were clearly within Plaintiffs' possession, custody, or control.

> [A] party must, without awaiting a discovery request, provide to the other parties: . . .
>
> ii. a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
>
> iii. a computation of each category of damages claimed by the disclosing party—*who must also make available for inspection* and copying as under Rule 34 *the documents or other evidentiary material*, unless privileged or protected from disclosure, *on which each computation is based, including materials bearing on the nature and extent of injuries suffered*[.]

Fed. R. Civ. P. 26(a)(1)(A)(ii), (iii) (emphasis supplied). When asked on May 16, 2024, whether they were in compliance with their obligations under Rule 26, Plaintiffs' counsel stated: "We have definitely complied with the letter and spirit of Rule 26 at this point." (Doc. 531 at 28.)

In response to the Town's argument that production of medical records after the close of written discovery should be sanctioned by dismissal, Plaintiffs assert that

"Plaintiffs' timely disclosure of medical providers and authorizations is sufficient for Rule 26(a)(1)(A)(ii) obligations." (Doc. 606 at 14.) They also point out they gave Defendants medical record releases. The provision of releases, however, does not negate Plaintiffs' discovery obligations. *See, e.g., Candelaria v. Erickson*, 2006 WL 1636817, at *1 (S.D.N.Y. June 8, 2006) (rejecting plaintiff's argument that "he ha[d] satisfied his discovery obligations by previously executing authorization for the release of medical records[]" where updated medical records were relevant and undisclosed).

Plaintiffs also rely on the Town's own alleged discovery lapses. The Town's discovery lapses, however, in no way excuse Plaintiffs' noncompliance. This has not been a case in which there has been equivalent and bilateral noncompliance. Instead, Plaintiffs' noncompliance has far exceeded the Town's and has been accompanied by representations of fact that have proved unreliable.

For these reasons, the court finds Plaintiffs' expert witnesses may rely on each other's opinions, medical records provided on or before May 16, 2024, and other information relied upon by experts in their field, but not on medical records which could and should have been produced by May 16, 2024, unless they are true supplementation because the record did not previously exist or reflects medical developments after May 16, 2024. Plaintiffs' request for clarification is therefore GRANTED and the Town's motion to preclude is therefore also GRANTED.

### C.    Whether the Court Should Dismiss the Personal Injury Claims of Seventy-One Plaintiffs Who Did Not Disclose Medical Records by May 16, 2024.

In its cross-motion, the Town seeks the dismissal of seventy-one Plaintiffs' personal injury claims for failure to produce their medical records by the court-ordered deadline, arguing Plaintiffs' production of "thousands of pages of responsive and relevant documents" pursuant to the instant motion constitutes a violation of the May 16 Order. (Doc. 602-11 at 15.) The Town further asserts that, "based upon [its] initial review of the newly produced records, it appears that at least for some of the records, Plaintiffs did not even make medical records requests until well after May 16, 2024." *Id.* at 17. It argues

that these records show Plaintiffs falsely represented to the court they were in full compliance with Rule 26 and the court's scheduling orders and that a sanction of dismissal is therefore warranted. Plaintiffs respond that they provided the Town with the additional medical records in an effort to comply with their duty to supplement under Federal Rule of Civil Procedure 26.

When deciding whether dismissal under Federal Rule of Civil Procedure 37(b) is an appropriate sanction for a party's noncompliance, a district court must determine: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Park*, 91 F.4th at 612 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (alteration in original)).

Under Federal Rule of Civil Procedure 26(e)(1)(A):

A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response:

> (A)  in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

> (B)  as ordered by the court.

"The duty to supplement continues even after the discovery period has closed." *Ferring Pharms. Inc. v. Serenity Pharms., LLC*, 2019 WL 5682635, at *2 (S.D.N.Y. Nov. 1, 2019) (quoting *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011)).

Plaintiffs argue that "nothing at that [May 16] hearing or in the [May 16] Order explicitly discharged Plaintiffs of their duties to supplement under Rule 26(e)(1)[.]"[4]

---

[4] Plaintiffs further argue dismissal is not appropriate given this court's decisions in *Forauer v. Vt. Country Store, Inc.*, 2014 WL 2612044, at *7-8 (D. Vt. June 11, 2014) (denying defendant's motion for sanctions where five out of twenty-four plaintiffs failed to appear at their noticed depositions), and *Johnson v. Vermont*, 2023 WL 4945376, at *3 (D. Vt. Aug. 3, 2023) (denying

(Doc. 606 at 11.) At the May 16 hearing, the court stated that evidence not disclosed by that date "will not be used at trial by the [P]laintiffs through some subsequent disclosure unless it is true supplementation; meaning a document or piece of information that could not have been acquired previously because it did not exist, and was not accessible from the third-party source or from the [P]laintiffs themselves." (Doc. 531 at 31-32.) As an example, the court stated: "[i]f . . . somebody sustains an injury in August of 2024, that's proper supplementation." *Id.* at 30.

Plaintiffs could have obtained medical records "before [they] filed the complaint[]" in 2017. *Id.* at 10. Plaintiffs do not claim the medical records they produced after May 16, 2024, solely reflect events that took place thereafter. They do not represent they could not have obtained the records previously because they did not exist. They do not proffer any excuse for failing to obtain the records previously beyond lack of diligence. The medical records Plaintiffs produced after May 16 therefore do not fall within the definition of "true supplementation." *See Sitts v. Dairy Farmers of Am., Inc.*, 2019 WL 3298537, at *5 (D. Vt. July 23, 2019) ("A party's 'duty to supplement . . . does not arise when a party seeks to bolster its earlier submission, but rather, arises only if the expert *subsequently* learns of information that was previously unknown or unavailable, that renders information previously provided . . . inaccurate or misleading because it was incomplete.'") (alterations adopted) (emphasis in original) (quoting *Allen v. Dairy Farmers of Am., Inc.*, 2014 WL 2040133, at *5 (D. Vt. May 16, 2014)). In ruling that Plaintiffs' expert witnesses may not rely on any material which should and could have been produced by May 16, 2024, there will be no violation of the May 16 Order, and dismissal is not warranted. As a result, the Town's motion to dismiss seventy-one Plaintiffs' personal injury claims as a sanction is DENIED.

---

plaintiff's motion for sanctions pursuant to defendant's failure to appear at a noticed deposition). Neither one of these cases addresses sanctions in the face of repeated instances of noncompliance.

### D.    Whether Plaintiffs Should Be Precluded from Offering Expert Testimony Regarding Claimed Property Damage.

The Town argues that Plaintiffs should be precluded from offering additional evidence regarding their claimed property damage and that their proposed real estate expert should therefore be excluded. Federal Rule of Evidence 702 governs expert witness testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

At the May 16 hearing, Defendants asked for clarification regarding how the court's order "applies to [P]laintiff[]s['] real property damages disclosures[,]" (Doc. 531 at 32), and whether Plaintiffs will be allowed to seek property damages at trial. In response, Plaintiffs represented that they had complied with Rule 26's requirements as well as with the Town's RFP by providing Zillow estimates and tax records for Plaintiffs' homes. Plaintiffs' counsel represented that their position at trial would be that Plaintiffs' homes are worthless. Based on that representation, the court ruled as follows:

> [W]orthless is zero. And you don't really need that number. The number cannot move from whatever the Zillow is so, for example, if the number is different, . . . it would not preclude the [P]laintiffs from arguing at trial that the value of the property is nothing. You don't suffer any prejudice. You don't have to have an expert witness. Zero is zero. It's nothing . . . that you would have to investigate.

*Id.* at 33.

Plaintiffs cite to their initial disclosures, where they "made clear that an expert would testify on the nature and extent of property damages in this case[,]" (Doc. 606 at 16), and they argue that the information provided by May 16, 2024, "was the best information available." *Id.* at 17. They do not, however, indicate whether there are additional documents upon which their expert witnesses will rely in forming their opinions. If there are no additional documents, Plaintiffs have not violated the court's May 16 Order and their expert witness may testify at trial regarding the documents produced thus far and the opinions they form on that basis. To the extent Plaintiffs seek to use their expert witness to introduce new evidence that was not disclosed by the May 16 deadline and which is not true supplementation, the court DENIES Plaintiffs' motion and GRANTS the Town's motion to preclude.

### E.    Whether the Town is Entitled to Attorney's Fees.

Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), a court granting a motion for sanctions under Rule 37(b) "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." The court in this case did not dismiss Plaintiffs' claims. Instead, it clarified the scope and application of its May 16 Order. Because the court did not grant the Town's motion for sanctions under Rule 37(b), the court finds the Town is not entitled to attorney's fees. The court's May 16 Order will suffice to prevent the Town from prejudice at trial and the expense of additional fact-related discovery.

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion for experts' use of documents reasonably relied upon by experts in their fields pursuant to Federal Rule of Evidence 703. (Doc. 598.) The court GRANTS the Town's cross-motion to preclude and DENIES the Town's cross-motion to dismiss. (Doc. 602.)

SO ORDERED.

This _3rd_ day of March, 2025.

_____
Christina Reiss, District Judge
United States District Court

16